BROWN v. STATE OF INDIANA.

[No. 469S69.  Filed October 8, 1970.  Rehearing denied December 17, 1970.]

48

*William C. Erbecker, James Manahan,* of Indianapolis, for appellant.

*Theodore L. Sendak,* Attorney General, *Robert F. Hassett,* Deputy Attorney General, for appellee.

JACKSON, J.—Appellant was charged by indictment with a violation of the Offenses Against Property Act, said indictment reading in pertinent part as follows:

"The Grand Jury for the County of Marion in the State of Indiana, upon their oath do present that ALBERT BROWN on or about the 15th day of FEBRUARY, A.D. 1967, at and in the County of Marion and in the State of

Indiana, committed the crime of theft of the property of WAKE UP OIL CO., INC., a corporation, in that he knowingly, unlawfully and feloniously obtained control over stolen property of WAKE UP OIL CO., INC., a corporation, to-wit: Oil, Transmission Fluid and Cigarettes, of the value of One Hundred and Fifty and 00/100 Dollars ($150.00), knowing that said property had been stolen by another, to-wit: INELL LEVERETT and JOHNNY SPENCER, the said ALBERT BROWN then and there intending to deprive the said owner, WAKE UP OIL CO., INC., a corporation, permanently of the use and benefit of the said property, then and there being contrary to the form of the statute in such case made and provided, and against the peace and dignity of the State of Indiana."

On July 19, 1967, appellant waived arraignment and entered a plea of not guilty to the crime as charged. Trial by jury commenced on December 9, 1968. The jury returned its verdict on December 10, 1968, finding appellant "* * * guilty of the crime of Theft of Property of the Value of Less Than One Hundred Dollars ($100.00), as covered by the Indictment * * *." The court thereupon ordered a pre-sentence investigation to be made and a report filed. On January 2, 1969, the court sentenced appellant to the Indiana State Farm for a period of 60 days and fined him $500.00 and costs.

Prior to the date set for sentencing, i.e. on December 23, 1968, appellant filed his motion for new trial; said motion comprises five separate pages of the record in this cause and is here omitted in the interest of brevity. Appellant's motion for new trial was overruled on January 3, 1969. Appellant's sole Assignment of Error on appeal is that:

"1. The trial court erred in overruling appellant's motion for new trial."

From the evidence adduced at the trial of this cause, viewed most favorably to the State, it appears that Charles Derbyshire was the manager of a Wake-Up Service Station located at Lyndhurst Drive and Morris Street in the City of Indianapolis on February 15, 1967. He arrived at the service station

at approximately 7:00 a.m. on said date and found that the storeroom had been broken into and that certain articles were missing, to-wit: forty-five (45) cartons of cigarettes, thirty (30) gallons of transmission fluid, forty-two (42) gallons of oil, an adding machine, a bank bag, a pair of shoes, and cash in the amount of $107.00. The State's principal witness, one Ronald Schoolcraft, a known burglar operating in Indianapolis, testified at the trial of this cause that he, along with one Johnny Spencer, committed the burglary in question.

Appellant owned and operated a general store at 1821 S. Lyndhurst in the City of Indianapolis. Said business necessitated the purchase and subsequent sale of distressed, "second-hand" merchandise. He also leased and operated a service station next to his general store, and, in the course of pursuing this business enterprise, he purchased numerous items such as automotive lubricants and accessories.

On February 15, 1967, Schoolcraft arrived at appellant's service station offering to sell transmission fluid, motor oil, and cigarettes. He told appellant at that time that such items had recently been stolen. Appellant paid Schoolcraft approximately $26.00 for the motor oil and transmission fluid and $1.50 for each of thirteen (13) cartons of cigarettes.

Appellant argues that such evidence is insufficient to sustain his conviction for the reason that there is no evidence by which a trier of fact could infer that he knew that the goods in question were stolen at the time he obtained control over them. Appellant testified in his own defense that Schoolcraft told him that the oil, transmission fluid, and cigarettes had come from a Gulf Service Station which Schoolcraft and a man named "Bill" operated as a partnership, that the partners were "splitting up," and that Schoolcraft was liquidating certain tangible assets of the operation.

It is well-settled in Indiana that a conviction will be sustained if there is any evidence of probative value of the facts

essential to support the judgment. *Bush* v. *State* (1968), 251 Ind. 84, 237 N. E. 2d 584; *Butler* v. *State* (1967), 249 Ind. 484, 229 N. E. 2d 471. Further, this Court on appeal will not weigh the evidence nor determine the credibility of the witnesses, *Croney* v. *State* (1969), 252 Ind. 319, 247 N. E. 2d 501; *Leaver* v. *State* (1968), 250 Ind. 523, 237 N. E. 2d 368; and, when the sufficiency of the evidence is raised as an issue on appeal, it will consider only that evidence most favorable to the State together with all reasonable inferences that may be drawn therefrom. *Buckner* v. *State* (1969), 252 Ind. 379, 248 N. E. 2d 348; *Sampson* v. *State* (1968), 250 Ind. 625, 237 N. E. 2d 254.

The following testimony of Ronald Schoolcraft is significant:

"Q. And what, if anything, did you tell the defendant at that time?
A. I mentioned I had some cigarettes and some transmission fluid and I asked him if he could use them and he said yes.
Q. Did you tell him where you got them?
A. Yes, sir, I did. About any place that you fence to or sell a person merchandise that has been stolen they ask you where it come from so in case somebody comes around they will know better not to try to sell this merchandise to these people.
Q. So you feel that they have to know where the goods came from?
A. Yes, sir, that is correct.
Q. And you told them that?
A. Yes, sir, I did."
(Tr., pp. 77, 78)
"Q. And this is the man right here that you sold this stuff to?
A. Yes, sir.
Q. And he knew it was taken right out of that burglary?
A. Yes, sir."
(Tr., pp. 87, 88)

Such direct, positive testimony by the State's principal witness was sufficient to justify the jury in determining that appellant knew, at the time he obtained control over the items in question, that they were, in fact, stolen property.

Appellant further contends that the trial court committed reversible error in concluding that it could not weigh the evidence in reaching a determination as to whether or not the defendant-appellant should have been entitled to a directed verdict of not guilty at the close of all the evidence. Said contention is predicated upon Specification #9 of appellant's motion for new trial, which reals as follows:

> "9. Error of law occurring at the trial in that the Court expressed a theory contrary to law in its ruling upon the defendant's motion for a directed finding of not guilty at the close of all the evidence the said theory as expressed upon the motion being as follows:
>
> MR. SAMPER: We feel that the jury should not be permitted to speculate and ask for a directed verdict at the conclusion of all the evidence.
>
> THE COURT: Well I, I should say that I'm sure that there is a, is a theory probably word for word what Mr. Samper has said here. I myself do not know how its possible to determine whether a person is of good moral character or not without weighing the evidence. I don't know how its possible. I know I couldn't do it. The only way I would have in determining the moral character of that particular witness would be by what I've heard in this courtroom—I would have to weigh that. I beileve the law precludes me from doing so."

Appellant's argument is without merit. It is a well-settled rule in Indiana that where a determination of an issue involves the weight of the evidence or the credibility of witnesses, it is an invasion of the province of the jury for the court to direct a verdict. *Davis* v. *State* (1968), 249 Ind. 596, 233 N. E. 2d 642; *State* v. *Patsel* (1960), 240 Ind. 240, 163 N. E. 2d 602; *State* v. *Torphy* (1940), 217 Ind.

383, 28 N. E. 2d 70; *State* v. *Kubiak* (1936), 210 Ind. 479, 4 N. E. 2d 193.

In *Green* v. *State* (1967), 249 Ind. 86, 229 N. E. 2d 726, this Court stated:

> "This cause was tried by a jury. The jury is the sole judge of the law and the evidence. They determine the weight of the evidence and the credibility of the witnesses."

The substance of appellant's final argument can best be stated in this opinion by reproducing verbatim Specifications #6 and 7 of his motion for new trial.

> "6. Error of law occurring at the trial in that the Court declined to grant the defendant's motion to strike voluntary utterance which was made orally during the trial in the following matter, under the following circumstances and with the following ruling by the Court:
>
> PROSECUTOR: Now what kind of business was the defendant operating?
>
> WITNESS SCHOOLCRAFT: Well its more or less a place for young kids to hang out and get in trouble.
>
> PROSECUTOR: Did he have a pool hall?
>
> WITNESS SCHOOLCRAFT: I've seen young kids down there twelve and thirteen years old—
>
> MR. SAMPER: We object to his volunteered answer sir in that its not responsive to the question.
>
> THE COURT: I think that ground is available only to the interrogator, that is, the person asking the question as grounds for a motion to strike.
>
> MR. SAMPER: We're objecting to the answer your honor.
>
> THE COURT: Well.
>
> MR. SAMPER: He's simply not answering what the prosecutor asked him.
>
> THE COURT: As, as I say, I think that ground as a motion to strike runs only to the interrogator. However, I will instruct the witness to confine his answers to the question. All right, go ahead.
>
> WITNESS SCHOOLCRAFT: Repeat that sir?
>
> PROSECUTOR: Was the defendant operating a pool hall in that location?

54

WITNESS SCHOOLCRAFT: I have seen a pool table in there, yes sir.

PROSECUTOR: And has there been a pin ball machine?

WITNESS SCHOOLCRAFT: Yes, sir, there has been.

7. Error of law occurring at the trial in that the Court permitted the trial prosecutor to undertake a continued course of interrogation of witnesses calculated to bring forth irrelevant, scandalous and slanderous matter while defense counsel was helpless to object because of the presence of the jury and because the questions repeatedly implied the answer. Such incidents took place with such frequency and so repeatedly that it is impossible to specify them in this motion but such incidents related to:

    a.  Other activities of the defendant which had nothing to do with this lawsuit.

    b.  The names of notorious persons who were allegedly acquainted with the defendant including one Morris Johnson.

    c.  The defendant's alleged corruption of the youth of Indianapolis.

    d.  The State's principal witness's conclusions as to the defendant's alleged guilty mental processes which testimony was of no possible probative value."

A review of the record of this cause substantiates appellant's contention that the prosecution was permitted to inject into said record irrelevant, scandalous, and highly prejudicial testimony concerning other alleged crimes and activities of the appellant. For purposes of illustration, we cite the following testimony of the State's principal witness, Ronald Schoolcraft:

"Q.  Now at the time of the burglary we have been talking about, were you running around with Morris Johnson and Leon Johnson?

A.  I was running around with large criminals on the west side of town, sir, some of the boys had done time at this time that this happened.

Q.  And was the defendant acquainted with these fellows?

A.  Yes, sir, I have been down to his house when he lived on Lyndhurst Drive which his home burned down. They had gambling, we played card and shot dice.

Q. So the defendant is acquainted with all these other hoodlums?

A. Yes, sir, there are younger boys that's involved in criminal acts besides these boys."

(Tr. p. 82)

"Q. You are telling the jury now that you are friendly with Mr. Brown?

A. That's correct. I don't have nothing against the man except that he has committed buying merchandise which is involved. His own boy has been hanging around, it's a place for young kids to run around other hardened criminals that has stolen, to see things that has happened, it leads them into a life where they start into crime."

(Tr. p. 115)

"The general rule in Indiana for the admission of evidence of separate, independent, and distinct crimes, in establishing the guilt of a defendant, is that such evidence is inadmissible except to show intent, motive, purpose, identification, or a common scheme or plan. *Zimmerman* v. *State* (1921), 190 Ind. 537, 130 N. E. 235; *Gears* v. *State* (1932), 203 Ind. 380, 180 N. E. 585; *Hergenrother* v. *State* (1939), 215 Ind. 89, 18 N. E. 2d 784; *Kallas* v. *State, supra." Watts* v. *State* (1950), 229 Ind. 80, 95 N. E. 2d 570.

The State has made no showing that the testimony or evidence above referred to was offered for a purpose which would permit its admissibility as an exception to the general rule enunciated in *Watts* v. *State, supra,* and those cases cited therein, and we, therefore, look with extreme displeasure upon the actions of the trial court in permitting said testimony to be admitted. However, the responsibility for keeping incompetent, irrelevant, immaterial and prejudicial testimony out of the record does not rest solely with the trial court. Appellant's counsel has an absolute duty to effectively preserve for appeal any and all errors committed during the course of the trial. In *Hensley* v. *State* (1969), 251 Ind. 633, 244 N. E. 2d 225, this Court stated:

"A party may not sit idly by and permit the court to act in a claimed erroneous matter and then attempt to take

advantage of the alleged error at a later time. Objections must be made timely so that they may be promptly corrected by the trial court. *Tyler* v. *State* (1968), 250 Ind. 419, 236 N. E. 2d 815; *Reid* v. *State* (1967), 249 Ind. 247, 231 N. E. 2d 808."

The record discloses that appellant's counsel made no objection whatsoever to the admission of the alleged prejudicial evidence set forth in his Specification of error #7. He argues that to so object would have been futile and would only have further prejudiced his client's case in the eyes of the jury. However true such an argument may be, it will not serve to dilute the long-standing rule of this Court that objections not raised in the court below are considered waived. *Liford* v. *State* (1965), 247 Ind. 149, 210 N. E. 2d 366; *Rogers* v. *State* (1949), 227 Ind. 709, 88 N. E. 2d 755; *Shircliff* v. *State* (1884), 96 Ind. 369.

Appellant's sole objection to the testimony in question, noted in his Specification #6, raises no question for our determination for the following reason. The ground upon which said objection was based was that the answer given by the witness, Ronald Schoolcraft, was unresponsive to the question asked by the Deputy Prosecutor. Appellant's argument on appeal is that said answer was incompetent because it related to other alleged criminal and improper activities attributable to him. Clearly he has changed the ground; and this Court has often held that, on appeal, a party may not urge for the first time other or different objections from those presented to the trial court. *Leaver* v. *State, supra; Short* v. *State* (1968), 250 Ind. 459, 237 N. E. 2d 258; *Johnson* v. *State* (1964), 245 Ind. 295, 198 N. E. 2d 373.

The judgment of the trial court is affirmed.

Hunter, C.J., Arterburn, DeBruler and Givan, JJ., concur.

NOTE.—Reported in 262 N. E. 2d 515.