Delores J. BEIRD, Personal Representative and Administratrix of the Estate of Michael Charles Beird, Appellant (Plaintiff Below),

v.

FIGG & MULLER ENGINEERS, INC., Anthes Industries, Ltd., Chicago Contractors Supply, Inc., BVN/STS, Inc., Appellees (Defendants Below).

No. 37A03–8604–CV–117.

Court of Appeals of Indiana,
Third District.

Dec. 30, 1987.

Rehearing Denied March 10, 1988.

Robert Randle, Randle & Shelmon, Rens-salaer, Leonard M. Ring, William J. Jovan, Chicago, Ill., for Delores J. Beird.

Richard A. Mayer, Jon F. Schmoll, Greg-ory J. Tonner, Spangler, Jennings, Span-gler & Dougherty, Merrillville, for Anthes Industries, Ltd.

John W. Barce, Barce, Vann & Ryan, Fowler, Donald J. O'Meara, Ronald J. Kam-mer, Nancy G. Lischer, Hinshaw, Culbert-son, Moelmann, Hoban & Fuller, Chicago, Ill., for Chicago Contractors Supply, Inc.

Peter C. Bomberger, Friedrich, Bomber-ger, Tweedle & Blackmun, Highland, James T. Ferrini, Stephen D. Marcus, Hen-ry R. Daar, Clausen Miller Gorman Caffrey & Witous, Chicago, Ill., for Figg and Mul-ler Engineers, Inc.

STATON, Judge.

Michael C. Beird was killed when a por-tion of a bridge under construction in East Chicago, Indiana, collapsed on April 15, 1982. Delores J. Beird, his widow and the personal representative of his estate, brought suit against, among others, Figg & Muller Engineers, Inc., designer of the bridge; BVN/STS, Inc., review designer of the bridge;[1] Anthes Industries, Ltd., seller of certain component parts used in con-structing the bridge; and Chicago Contrac-tors Supply, Inc., manufacturer of those component parts. As Plaintiff, Delores J. Beird, alleged that all four of these De-fendants had been negligent, and their neg-ligence resulted in her husband's death. She further alleged that Anthes and Chica-go were strictly liable for her husband's death.

Before trial, the Plaintiff entered into a Covenant Not to Sue and a settlement agreement with Superior Construction Company, the general contractor on the project. She also entered into settlement agreements with three other former par-ties.

A jury found for the Defendants and awarded the Plaintiff nothing in damages. A judgment was entered on the verdict by the trial court. From this negative judg-ment, Plaintiff appeals, raising three issues for our review. Restated, they are:

1. Whether the trial court erred by re-fusing Plaintiff's four tendered in-structions and by giving nine other instructions.

2. Whether the court erred by allowing the Defendants to present evidence of the Plaintiff's settlements with former parties and, further, by allow-ing the Defendants to base their de-fenses on the culpability of others rather than on the lack of their own wrongdoing.

3. Whether the Plaintiff was denied a fair trial as a result of the court's many discovery rulings—rulings which the Plaintiff contends forced her to trial without knowing the De-fendants' experts or their opinions despite the fact her experts had been fully deposed before trial.

Reversed as to Defendants Anthes and Chicago; affirmed as to Defendants Figg and BVN/STS.

---

1. BVN/STS, Inc., filed for bankruptcy during the pendency of this appeal. It did not submit an Appellee's Brief.

## I.

### *Instructions*

#### A. *Anthes & Chicago*

As to Defendants Anthes and Chicago, the following issue is dipositive: Did the trial court err in refusing to give Plaintiff's Tendered Instruction Number 5(C)? [2]

The relevant portion of the Plaintiff's Tendered Instruction Number 5(C) states:

> ... It is a defense that a cause of the physical harm is a nonforseeable [sic] misuse of a product by the claimant or any other person. Where the physical harm to the claimant is caused jointly by a defect in the product which made it unreasonably dangerous when it left the seller's hands and the misuse of the product by one other than the claimant, then the concurrent acts of the third party do not bar recovery by the claimant for the physical harm.

Record at p. 1094, Volume 5.

■ In reviewing the denial of a tendered instruction, we must consider: (1) whether the tendered instruction correctly states the law; (2) whether the evidence supports the instruction; and (3) whether other instructions have adequately covered the substance of the tendered instruction. *Flowers v. State* (1985), Ind., 481 N.E.2d 100, 103. Further, the Plaintiff must show that the refusal to give the tendered instruction resulted in prejudice. *City of Lake Station v. Rogers* (1986), Ind.App., 500 N.E.2d 235, 240. Only upon an affirmative showing on all the above points will the refusal constitute reversible error. *Id.*

■ Here, the denial of the Plaintiff's tendered instruction was error. First, the tendered instruction correctly states the law in that I.C. 33–1–1.5–4(b)(2) (1978 version) states:

> It is a defense that a cause of the physical harm is a nonforseeable misuse of the product by the claimant or any other person. Where the physical harm to the claimant is caused jointly by a defect in the product which made it unreasonably dangerous when it left the seller's hands and the misuse of the product by one other than the claimant, then the concurrent acts of the third party do not bar recovery by the claimant for the physical

[2]. The Plaintiff tendered four instructions—three of which were applicable only to Anthes and Chicago (dealing with the theory of strict liability) and one of which was applicable to all four parties (dealing with the theory of negligence). She contends that the court erred in refusing to give these instructions. She also contends that the court erred in giving nine of its own instructions; each of those instructions dealt with the theory of strict liability and, thus, were applicable only to Anthes and Chicago.

Because the court committed reversible error as to Anthes and Chicago by refusing to give Plaintiff's Tendered Instruction Number 5(C), we will not address in detail the Plaintiff's contentions regarding the other instructions applicable to Anthes and Chicago. It is well settled in Indiana appellate procedure that this Court will not consider questions not essential to a determination of the appeal. It is also established that only one prejudicial error need be presented for reversal. *Coleman v. Mitnick* (1965), 137 Ind.App. 125, 203 N.E.2d 834, *trans. denied.* However, we did review each of these contentions and found no other reversible error. The court's instructions 23, 24, 25, 26, 27, 28, and 29 were all proper statements of Indiana law. The Plaintiff waived her argument that the first paragraph of Instruction 23 was erroneous—she did not object to it either at trial or in her Motion to Correct Errors. Ind. Rules of Procedure, Trial Rule 51(C); *Jackson v. Russell* (1986), Ind.App., 498 N.E.2d 22, 34, *trans. denied.* The court's instructions 8 and 10 were also proper statements of Indiana law. The Plaintiff's objection to the word "shoring" in those instructions—she preferred the phrase "falsework system"—is waived since she failed to offer a more accurate instruction. *Jackson, supra.*

The gist of Plaintiff's Tendered Instruction Number 2 was covered in the court's instruction Number 23. The substance of Plaintiff's Tendered Instruction Number 3 was covered in the court's instructions 26, 28, and 29. Thus, it was not error for the court to refuse to give these instructions. *Flowers v. State* (1985), Ind., 481 N.E.2d 100, 103. (The court did not instruct the jury that one of the defenses to strict liability is that the user or consumer knew of the defect, was aware of the danger, and nevertheless proceeded unreasonably to make use of the product. *See* West's AIC 33–1–1.5–4 (Supp.1987) (The 1978 version of this statute was in effect at the time of the bridge collapse and the filing of the Plaintiff's complaint; essentially, though, this section of the statute remained the same after the 1983 revision). Yet, the Plaintiff did not show that this resulted in prejudice to *her. City of Lake Station v. Rogers* (1986), Ind.App., 500 N.E.2d 235, 240.)

harm, but shall bar any rights of the third party, either as a claimant or as a subrogee.

Second, the evidence supports the instruction. There was evidence at trial from which the jury could have concluded (1) that Michael Beird's death was caused by a defect in the product[3] which made it unreasonably dangerous when it left the seller's hands and (2) that Michael Beird's death was jointly caused by the misuse of the product by Superior ("one other than the claimant").[4]

Evidence supporting a conclusion that a defect in the product caused the collapse included testimony by one of the Plaintiff's experts that the collapse resulted from the failure of diagonal braces which were a part of the falsework system (Record at pgs. 2021–22, 2041–2042, Volume 9) and that each tower in the system should have been able to hold one million pounds, yet each one only held seven hundred thousand pounds (Record at p. 2027–28, Volume 9).

Evidence supporting a conclusion that Superior's misuse of the product caused the collapse included testimony by Defendants' experts that, among other things, Superior deviated from approved plans (Record at p. 1814, Volume 8); that vital support wedges were either not used or not used properly (Record at pgs. 3118–19, 3151, Volume 13); that sandboxes used to support tower legs were not built as designed (Record at p. 2897, Volume 12); and that Superior did not follow good construction practices (Record at p. 3268, Volume 14).

Third, no other instruction given by the court covered the substance of the Plaintiff's instruction 5(C).

Finally, the court's refusal to give the tendered instruction was prejudicial to the Plaintiff. In Instruction Number 23, the court correctly stated that the Plaintiff would not meet her burden of proof if it was *equally likely* that the product was defective or that the product was misused. Yet, jury members were not told how to proceed if they concluded that both the defectiveness of the product *and* the misuse of the product jointly caused the collapse. Jury members knew that if the product was defective, they were to find for the Plaintiff. They knew that if the product was misused, they were to find for the Defendants. They also knew that if both were equally likely, they were to find for the Defendants. But they did not know that they had a fourth alternative—namely, that if both a defective condition and a misuse of the product existed, they could find for the Plaintiff. It is possible that jury members concluded that both existed, but mistakenly thought that such a situation barred recovery by the Plaintiff. I.C. 33–1–1.5–4(b)(2) states differently and should have been read to the jury.

## B.

### All Defendants

■ As to all Defendants, the Plaintiff contends that the court erred in refusing to give her concurrent cause instruction. She also contends that ten of the court's instructions suggested a defense verdict.

The Plaintiff's tendered concurrent cause instruction states:

Where an injury is proximately caused by the concurrent negligence of two or more parties, the injured person may recover from any or all of such parties, provided that there was no contributory negligence on the part of the injured person; and none of the parties concurring in such negligence may interpose as

---

**3.** Anthes manufactured and Chicago sold to Superior a falsework system to support the bridge while it was being constructed. The falsework system consisted of collapsible tower legs and a beam structure, among other things, used to support the weight of a ramp on the bridge while concrete was being poured. After construction, the falsework system would be removed.

**4.** According to the statute, if the jury did conclude that both a defect in the product and a misuse of the product caused the collapse, the concurrent acts of the third party (Superior) would not bar recovery by the claimant (Michael Beird).

a defense the fact that the negligence of the other contributed to the injury.

Appellant's Brief at p. 48.

While the Plaintiff has not shown that this instruction was ever tendered (it is not found in the record), we will, nonetheless, address her argument.

The refusal of the court to give the instruction was not error since the substance of the instruction was adequately covered in other instructions. *Flowers, supra.* Indeed, the court instructed the jury: (1) to give separate and fair consideration to each defendant (Instruction 2); (2) that it could find for only some or for all of the defendants (Instruction 41 and 42); (3) that there were sixteen possible verdicts (Instruction 44); and (4) what constituted the Plaintiff's burden of proof in negligence against *each* defendant (Instructions 7 to 10).

Further, the Plaintiff's contention that the court's instructions, taken as a whole, suggested a defense verdict is without merit. Each instruction correctly stated the law and was supported by the evidence. The court's reference to Superior in Instruction 28—which the Plaintiff contends was prejudicial—was necessary in light of the Defendants' theory that Superior's misuse of the product was the sole proximate cause of the bridge collapse.[5]

## II.

### Evidence Re: Other Parties

#### A. Settlements

The Plaintiff contends that the court erred in allowing the Defendants to present evidence—both during *voir dire* and during trial—of its settlements with other parties.

#### 1. Voir Dire

■ Before empaneling the jury, the trial judge ruled that he would allow no mention of settlements during *voir dire.* (Record at 1349, Volume 6.) Yet, according to the Plaintiff, counsel for Figg proceeded to question potential jurors about "certain parties" not present at trial "who were

responsible;" counsel for Anthes made reference to "someone else" who could be responsible; and counsel for Chicago made a similar inquiry. Other, "more pointed," questions were also asked: Whether jurors would consider the conduct of "other people who are not here" and whether jurors knew the counsel for Superior Construction.

However, except for the last two questions cited above, counsel for Plaintiff made no objection to such inquiries and, in fact, asked essentially the same questions himself. For example, at pages 1423 to 1424 of the record (Volume 6), counsel for Plaintiff asked:

> In this case, we are suing only four. The fact that you may feel that others have some responsibility, you're to judge only those in this lawsuit. Do you feel that you could do all that? ... And that if you feel there is responsibility on the part of one or more or all of the four, the fact that someone else, in your view, based on the evidence may have had something, or may have contributed someway, you would follow the Judge's instructions as to the law as to the four, and not get into guessing games as to the others?

Later, at page 1452 of the record (Volume 6), counsel for Plaintiff asked:

> And the fact that we are suing four Defendants out of a multitude that was on that work, do you feel that you could decide the liability of those persons here only, without being ... without worrying about whether anyone else may have been part to blame? Did I make that too complicated? I'll withdraw it. With respect to the people here, do you feel that you can give the Plaintiff and the Defendants a fair trial?

While we do not perceive how any of these questions violated the trial court's order—no mention of settlements was made—Plaintiff's argument that it was improper for Defendants, during *voir dire,* to

---

**5.** The refusal of the court to give Plaintiff's Tendered Instruction Number 5(C) was dispositive of the case as to Anthes and Chicago. Yet, because it was not dispositive of the case as to Figg and BVN, we will proceed to discuss the remaining issues dealing with settlement agreements and discovery.

hint at the culpability of others is waived in light of her counsel's own questioning.

## 2. *Trial*

Before trial, Plaintiff made a Motion in Limine, asking the court to bar any evidence of her Covenant Not to Sue and settlement agreement with Superior. (Record at 1047, Volume 5.) The court ruled that the parties could present evidence that such documents exist, but that any evidence as to the amounts involved in such agreements was barred unless addressed first by the Plaintiff. (Record at 1534, Volume 7.) The documents were eventually admitted into evidence, but not shown to the jury. (Record at 2506, Volume 11.) Before the documents were admitted, Plaintiff's counsel stated: "For the limited purpose of the Court using this later to determine what if any deductions should be made from the judgment, or any other matter of law that the Court must decide in construing this. [sic] I have no objection to it...." (Record at pgs. 2505–06, Volume 11.)

Plaintiff now argues that putting the existence of settlements before the jury prejudiced her case by leading the jury to believe satisfaction had already been received for her husband's death.

However, Plaintiff's counsel waived any such argument by failing to object at various points in the trial when the settlement with Superior was mentioned by a defense counsel or a witness (Record at pgs. 1570, 1612, 1624–25, 2501–02, 2606, 3516, 3542–43) and by injecting his own comments regarding the settlement; for example, during his closing statement (Record at p. 3504, Volume 14: "Superior has at least recognized its responsibility"). Further, when the court informed the parties that they could question Mrs. Beird about the settlement, but also ruled that questions regarding the amount of the settlement were to be asked once the jury was excused, Plaintiff's counsel not only failed to object to such questioning, but he also

agreed such an arrangement was proper. (Record at pgs. 2595–97, Volume 11.) And, finally, when Figg sought to have the documents themselves admitted into evidence for a limited purpose, the Plaintiff's counsel stated that he had no objection.

■ Merely challenging a trial court's ruling on a Motion in Limine fails to preserve any error for review. *Tyra v. State* (1987), Ind., 506 N.E.2d 1100, 1102. The office of such a motion is not to obtain a final ruling upon the admissibility of evidence. *Id.* Evidence sought to be excluded by a Motion in Limine must be objected to at the time of its introduction at trial for any error in the denial of the motion to be preserved. *Lagenour v. State* (1978), 268 Ind. 441, 376 N.E.2d 475, 481; *Remsen v. State* (1986), Ind., 495 N.E.2d 184, 189; *Collins v. State* (1984), Ind., 464 N.E.2d 1286, 1290; and *Norton v. State* (1980), 273 Ind. 635, 408 N.E.2d 514, 525.[6]

The Plaintiff contends that:

The trial court's ruling was of such nature that no offer of proof by plaintiff could have been made to preserve error. Plaintiff's counsel had to use a preemptive strategy to ameliorate the prejudicial effect of the court's in limine ruling before the jury by informing them in the opening statement that plaintiff had already settled with another contractor.

Appellant's brief at p. 21.

This argument is not persuasive. In *Brown v. State* (1970), 255 Ind. 47, 262 N.E.2d 515, *reh. denied,* the defendant claimed that any objection by his counsel to the admission of alleged prejudicial evidence would have been futile—it would have only further prejudiced his case in the eyes of the jury. The court held that this did not serve to dilute the rule that objections not raised in the court below are considered waived on appeal. *Id.,* 262 N.E. 2d at 520.

**6.** The Plaintiff relies on *Zion v. State* (1977), 266 Ind. 563, 365 N.E.2d 766, *trans. denied,* and *Lockridge v. State* (1975), 263 Ind. 678, 338 N.E.2d 275, for the proposition that if a motion to suppress is overruled just prior to trial, it is unnecessary for counsel later during the trial to object when the questioned evidence is offered. However, this reliance is misplaced. Such language was disapproved in *Pointon v. State* (1978), 267 Ind. 624, 372 N.E.2d 1159, 1161.

### B. *Culpability of Others*

The Plaintiff also contends that the court erred in allowing the Defendants to base their defenses on the culpability of others rather than on the lack of their own wrongdoing. However, the Plaintiff has waived this argument as well.

First, she has cited no cases to support her argument that such a tactic is forbidden. Second, not only did Plaintiff's counsel allow his own witness to testify regarding Superior's deviation from approved plans (Record at p. 1814, Volume 8), but he also failed to object when defense witnesses testified as to, or defense counsel referred to, Superior's culpability (Record at pgs. 3548, 3549, 3579, Volume 14) and he himself referred to Superior's role in causing the collapse (Record at p. 3482, Volume 14: "Didn't say they (the Defendants) were the only ones that caused it, obviously they didn't. Superior did, too." See also Record at pgs. 1564, 3496–97, 3498, 3503, 3504, 3505, and 3589.)

### III.

### *Discovery*

The Plaintiff's Amended Complaint was filed on July 8, 1982. On August 15, 1983, the trial judge set a trial date of March 4, 1985, with discovery to be completed by December 4, 1984. Then, on February 26, 1985, the court reset the trial for January 6, 1986, with discovery to be completed by October 31, 1985.

On October 18, 1985, the court denied Figg's motion to continue the trial, but reset the discovery cut-off for December 1, 1985, because the Plaintiff had not yet responded to certain discovery requests.

### *Rulings Re Plaintiff's Experts and Information*

Throughout the course of pre-trial discovery, the Plaintiff had responded to various requests by Defendants as follows: "Plaintiff's experts unknown" on October 20, 1982, and March 1, 1984; and "Plaintiff's experts unknown" and "no independent investigation of accident conducted yet" on March 28, 1985.

On June 13, 1985, the court ordered the Plaintiff to respond within sixty days to then-outstanding interrogatories and requests for admissions of fact. The Plaintiff did not comply with this order. Indeed,

on July 15, 1985, the Plaintiff filed answers which failed to reveal her allegations of negligence or the identity of witnesses. She answered seventeen interrogatories with the phrase "matter is still being investigated."

At the above-mentioned October 18, 1985, hearing on Figg's motion to continue the trial, the court "recommended" to Plaintiff that she respond to interrogatories and reveal the names of her experts so that the Defendants would have an opportunity to depose them before the December 1, 1985, discovery cut-off date. The judge warned that the discovery cut-off date would be enforced. But, on October 21, 1985, the Plaintiff filed perfunctory responses to a defendant's request for production, answering most requests with the words "none," "unknown," "previously provided," and "already in possession of all counsel." Responses to interrogatories, filed on the same date, were also perfunctory. The Plaintiff again stated that her experts were unknown.

On November 4, 1985, Anthes filed supplemental interrogatories seeking the identity of Plaintiff's experts. At a hearing on November 6, 1985, a defendant, on a motion to compel the answers to interrogatories or for sanctions, told the court that the Plaintiff had repeatedly responded to discovery requests with the assertion that she did not have factual information to support the allegations of her complaint. The court ordered the Plaintiff to respond to interrogatories and to reveal the names of her experts by November 20, 1985. The Plaintiff later named Roy Beal and Merle Brander as her experts.

On November 20 and 22, 1985, two defendants sought sanctions against the Plaintiff for failure to file answers to discovery documents. They requested that Plaintiff's case against each of them be dismissed.

On November 21, 1985, Anthes made a motion to compel the depositions of Plaintiff's experts or in the alternative to bar expert testimony on behalf of the Plaintiff. The Defendants' motions for sanctions against the Plaintiff were later dropped as part of a discovery agreement between the parties.

By agreement between the parties, the Plaintiff's experts were deposed by the Defendants on November 27 and 29, 1985. The Plaintiff asserted that they could not

give complete opinions without first reviewing defense documents; by agreement, the depositions were continued to December 9, 1985, and held on that date and on four additional days in December 1985. However, the Plaintiff's counsel instructed the experts not to respond to several questions; thus, the court, on December 23, 1985, ordered the Plaintiff, at her own expense, to produce the experts for the conclusions of their depositions.

On December 9, 1985, the Plaintiff submitted supplemental answers to interrogatories, naming the firm Raths, Raths & Johnson as an additional provider of expert testimony. She claims this firm had provided expert services for Superior and was not available to her as a witness until December 9, 1985—by that date, Superior had settled all of its lawsuits involving the bridge collapse. On December 23, 1985, the court barred this firm as the provider of expert testimony.

### Rulings Re Defendants' Experts and Information

On October 21, 1985, the Plaintiff filed a notice to produce as to each defendant, requesting, among other things, an expert witness list. The notice to produce and a subsequent motion to compel a response was later withdrawn by the Plaintiff because the notice to produce had not been served to all of the Defendants.

On November 13, 1985, the Plaintiff filed interrogatories and a request for production of documents regarding experts with the court. These had been served on all Defendants.[7] The interrogatories consisted of forty-two questions and at least eighty-four sub-parts. Under the local rule, parties were limited to thirty-five questions. A separate set of interrogatories, consisting of two questions, was also served on each Defendant. Those questions sought the names of all Defendants' experts, their qualifications, the subject matter of their testimony, and their opinions and bases for their opinions.

On November 21, 1985, the Plaintiff filed a motion to compel Anthes to produce the documents listed in her request for production of documents. It is not clear from the

record whether she filed such a motion against the other Defendants.

On November 26, 1985, the judge ordered the Defendants to answer the interrogatories filed on November 13, 1985. However, it is not clear that he was aware of the number of questions included in the first set of forty-two questions or that there was a second set containing two questions. The court's ruling on that date makes no specific reference to the request for production of documents; however, the court did deny the Plaintiff's motion to compel all other outstanding discovery. Presumably, then, that denial encompassed the request for production of documents.

Other discovery disputes were resolved by agreement of the parties on November 26, 1985.[8] The court approved the agreement on that date and ordered the parties to comply with it. One issue not resolved by the agreement was whether the Plaintiff would be allowed to depose the Defendants' experts; on November 26, 1985, the court denied the Plaintiff's motion to take the depositions of Defendants' experts unless the parties agreed otherwise. The judge reiterated that he intended to enforce the discovery cut-off date of December 1, 1985.

On December 20, 1985, the Plaintiff filed a motion to compel the Defendants to answer the interrogatories and the request for production of documents filed on November 13, 1985. Because the interrogatories numbered more than thirty-five, she also filed a motion seeking leave to file more than thirty-five interrogatories. On December 23, 1985, the court denied the Plaintiff's motion to file more than thirty-five interrogatories and overruled her motion to compel the answers to both sets of interrogatories or the request for production of documents. Only those items agreed to by and between the parties on November 26, 1985, were to be complied with by the parties.

Also on December 23, 1985, the court granted the Defendants' motion to quash the rest of the Plaintiff's discovery documents filed on December 20, 1985.

Figg identified its experts on December 23, 1985. Anthes identified its experts in the pre-trial order. Chicago identified its

---

7. The Plaintiff claims all counsels were served with these documents on November 7, 1985. Anthes admitted to the court that it had received the documents on that date, but there is no showing in the record that the other defendants received them on that date.

8. From the record and briefs, we are unable to discern exactly what this agreement entailed.

expert at trial, but that expert did not testify.[9]

The Plaintiff contends that she was denied a fair trial as a result of the court's many discovery rulings. She claims these rulings forced her to trial without knowing the Defendants' experts or their opinions despite the fact her experts had been fully deposed before trial. Her Motion to Correct Errors raised many issues regarding discovery in this case; we will consolidate those issues as follows:

Whether the court erred:

1. On November 6, 1985, by granting Figg's motion to compel discovery, thus, requiring the Plaintiff to reveal the names of her experts, but, on November 26, 1985, denying the Plaintiff's motion to depose the Defendants' experts.

2. On December 23, 1985, by ordering the Plaintiff to produce her experts for the conclusions of their depositions.

3. By barring the expert testimony that would have been provided for Plaintiff by Raths, Raths & Johnson.

4. On December 23, 1985, by denying the Plaintiff leave to file more than thirty-five interrogatories allowed by local rule and, further, by denying the Plaintiff's motion to compel all Defendants to answer those interrogatories, provide the names of their experts, and produce certain documents regarding experts.

5. On December 23, 1985, by granting the Defendants' Motion to Quash the Plaintiff's outstanding discovery requests filed on December 20, 1985, thereby refusing to enforce the discovery agreement entered into by all parties before the court on November 26, 1985.

In her brief, the Plaintiff first focused briefly on the prejudice that allegedly resulted from the court rulings taken as a whole. She then specifically addressed issues one and three. We will address those issues; however, we will not address issues two, four, or five. While these issues were raised in the Plaintiff's motion to correct errors, and, facts regarding them were cited in the facts section of her brief, they were not argued—or even mentioned—in the argument section of her brief.

**9.** The facts as recited here do not cover every ruling made by the court, every motion made by a party, or every discovery document. They

Ind. Rules of Procedure, Appellate Rule 8.3(A)(7) states, in part:

Each error assigned in the motion to correct errors that appellant intends to raise on appeal shall be set forth specifically and followed by the argument applicable thereto ... The argument shall contain the contentions of the appellant with respect to the issues presented, the reasons in support of the contentions along with citations to the authorities, statutes, and parts of the record relied upon, and a clear showing of how the issues and contentions in support thereof relate to the particular facts of the case under review ... Any error alleged in the motion to correct errors not treated as herein directed shall be deemed waived.

*See also Whisman v. Fawcett* (1984), Ind., 470 N.E.2d 73, 80 (Failure to present any argument or citations of authority in support of a contention raised on appeal constitutes waiver of the alleged error). Issue Four was mentioned in the Plaintiff's Reply Brief, but it was not argued as required by A.R. 8.3(A)(7).

A. *Issue One: Naming and Deposing Experts*

■ The trial court exercises judicial discretion in ruling upon discovery matters, and an appellate court will interfere only upon a showing of abuse of that discretion. *Allen v. Scherer* (1983), Ind.App., 452 N.E.2d 1031, 1035, *reh. denied.* Here, the trial court did not abuse its discretion by ordering the Plaintiff to reveal the names of her experts.

■ The collapse occurred on April 15, 1982. Yet, as late as October 21, 1985, the Plaintiff stated in response to interrogatory questions that her experts were unknown. The Defendants had been requesting this information since 1982.

Indeed, throughout the course of pre-trial discovery, the Defendants had not been able to elicit from the Plaintiff either the names of her experts or the factual information necessary to support the allegations of her complaint. On June 13, 1985, the court ordered the Plaintiff to respond within sixty days to then-outstanding interrogatory questions and requests for admissions of fact. However, on July 15, 1985, the Plaintiff filed "answers" which essentially failed to comply with this order. She

only cover the information that the Court was able to glean from the briefs and the record as being determinative of the outcome of the case.

answered seventeen questions with the phrase "matter still being investigated."

On October 18, 1985, the court "recommended" to Plaintiff that she respond to interrogatory questions and reveal the names of her experts. The judge stated that the December 1, 1985, discovery cut-off date would be enforced. On October 21, 1985, the Plaintiff filed perfunctory responses to discovery documents and still stated that her experts were unknown.

Finally, on November 6, 1985, a Defendant made a motion to compel the Plaintiff to answer discovery documents, or in the alternative, for sanctions against the Plaintiff. The court then ordered the Plaintiff to reveal the names of her experts by November 20, 1985.

Ind. Rules of Procedure, Trial Rule 37(D) states, in part;

> If a party ... fails ... to serve answers or objections to interrogatories submitted under Rule 33, after proper service of the interrogatories ... the court in which the action is pending on motion may make such orders in regard to the failure as are just, and among others it may take any action authorized under paragraphs (a), (b), and (c) of subdivision (B)(2) of this rule....

Among other things, paragraphs (a), (b), and (c) of subdivision (B)(2) allow the court to take designated facts as true, to refuse to allow the disobedient party from supporting or opposing claims or defenses, to prohibit that party from introducing designated matters into evidence, to strike out certain pleadings, or to dismiss the action.

Thus, the court's ruling here was proper and just. In fact, it was more than fair. The Plaintiff could have been subject to any of the more harsh sanctions available under T.R. 37(D); yet, the court merely ordered her to reveal the names of her experts. The court did not even order the Plaintiff to provide her experts for deposition—she did that by agreement with the Defendants.

■ Further, the court did not abuse its discretion in denying the Plaintiff's motion to depose the Defendants' experts. The Defendants' experts had been available since 1982; yet, the Plaintiff did not request the names of those experts until October 21, 1985. That request was later withdrawn. The Plaintiff's next request was not made until November 13, 1985—eighteen days before the discovery cut-off

date and less than two months before trial. Many other depositions were scheduled to take place in December 1985; thus, scheduling the deposition of the Defendants' experts may well have required the court to postpone the trial to a later date. The court's refusal, then, to allow the Plaintiff the depose the Defendants' experts was reasonable in light of the following: (1) the trial had already been rescheduled once; (2) the discovery cut-off date had been reset twice; and (3) it had been three and one half years since the collapse. Furthermore, the court's refusal was proper under T.R. 37(D) as a sanction against the Plaintiff for her delay in responding to interrogatories, i.e., in revealing the names of her experts. A party may not wait until the last possible moment to act, then rely on discovery rules and expect the court to halt its proceedings in order to accommodate her motion. *Chustak v. Northern Ind. Public Service Co.* (1972), 259 Ind. 390, 288 N.E.2d 149, 154.

**B.** *Issue Three: Barring the Testimony of Raths, Raths & Johnson*

■ The court did not abuse its discretion by barring Raths, Raths & Johnson as a provider of expert testimony. The judge stated again and again that his discovery cut-off date of December 1, 1985, would be enforced. The Plaintiff named the firm as a provider of expert testimony on December 9, 1985. It is within the discretion of the trial court to place bounds on the extent of discovery; therefore, it may require discovery to be completed by a certain date to prevent the delay of trial. *Coster v. Coster* (1983), Ind.App., 452 N.E.2d 397, 400.

■ While the Plaintiff now contends that the firm was not available until December 9, 1985, she failed to inform the court and the defendants—before the discovery cut-off date—that the firm might be available to her for trial. Furthermore, the Plaintiff had almost four years to find suitable experts; Raths, Raths & Johnson was only one of many possible choices.

Reversed for a new trial as to defendants Anthes and Chicago;[10] affirmed as to defendants Figg and BVN.

ROBERTSON, J., concurs.

HOFFMAN, J., dissents with opinion.

HOFFMAN, Judge, dissenting.

I respectfully dissent.

**10.** We do not retain jurisdiction.

Instruction 5C was a part of Instruction 5 tendered by appellants. The record discloses that the court had written the word "withdraws" next to 5C and 5C(1). The court crossed out 5C(2), (3) and (4) and wrote "no evidence" next to that part. Above "Plaintiff's Instruction No. 5 is written "give as modified." It also deleted certain words in that part which was given.

In his order the judge indicated he would give Instruction 5 as modified.

The appellant in dictating his objections to the instruction made the following statement:

"Plaintiff objects to the Court's refusal of Section C of Plaintiff's Instruction Number 5 as there was no instruction by the Court as to the burden of proof of any defense raised in a product liability action, and furthermore that Sub-paragraph C(1), (2) and (3) were proper statements of Indiana law."

Trial Rule 51(C) states:

"The Court shall note all instructions given, refused or tendered...."

Thus the court was required to properly mark on all instructions those to be given and those to be refused.

The court properly followed T.R. 51(C). If the record was not correct, it was incumbent upon the party who claims the same to be incorrect to take steps to provide this Court with a proper and correct record.

The record in this case clearly shows that 5C was withdrawn by the plaintiff and thus presents no issue for appellate review.

The trial court should be affirmed.

## OPINION DENYING PETITION FOR REHEARING

Defendants Anthes Industries, Ltd., and Chicago Contractors Supply, Inc., petition for rehearing of the opinion appearing at 1114.

Both of the Defendants agree with Judge Hoffman's dissent and contend that because the record shows that the Plaintiff had withdrawn Tendered Instruction 5(c), Part I–A of the opinion is erroneous.

It is correct that the words "plaintiff withdraws" are written next to paragraph

(c) of Plaintiff's Tendered Instruction 5 (see Record at Volume 5, page 1093–94). While it can be assumed that the trial judge did indeed write those words (in fact, in its petition for rehearing, Anthes submitted an affidavit from the trial judge stating that he had), the record on appeal did not show that he actually had, or, what had transpired between counsel and the judge at the time the instruction was tendered.

By agreement, objections to instructions were not stated to the judge until the jury retired to deliberate. Court records show that the Plaintiff objected at that time to the refusal of the court to give paragraph (c) of her Tendered Instruction 5 (Record at Volume 5, page 1194). (The specific objection is shown in the Appendix Brief, page 29.) The objection was also raised in her Motion to Correct Errors (Record at Volume 1, pages 11–12) and in the Appellant's Brief (page 44).

Even if the Plaintiff did waive her objection to the court's refusal to give Tendered Instruction 5(c), she did not waive her objection to the court's refusal to instruct the jury that *a nonforeseeable misuse acting concurrently with an unreasonably dangerous condition is not a defense.* This is so because she also objected to the court's refusal to give her Tendered Instruction 3 regarding what affirmative defenses *were* available (see instruction at page 33 of Appendix Brief) and she objected to the court's instruction 29 defining misuse. In fact, she specifically argued at trial that instruction 29 failed to state the proposition underlined above (see page 27, Appendix Brief). Any of these instructions—Tendered Instructions 3 or 5(c) or Given Instruction 29—would have been an appropriate vehicle for stating that proposition. Because the Plaintiff's objections regarding these instructions were overlapping, we chose to address her objections to Tendered Instruction 5(c).[1]

ROBERTSON, J., concurs.

HOFFMAN, J., would grant without opinion.

---

1. In Footnote 2 on page 1116 of the opinion, we state that Given Instruction 29 was a proper statement of Indiana law and that the substance of Plaintiff's Tendered Instruction 3 was cover-

ed in the court's instructions 26, 28, and 29. We made those statements once we had determined that the trial court should have given Tendered Instruction 5(c).