**VIBROMATIC CO., INC., Appellant (Plaintiff Below),**

v.

**EXPERT AUTOMATION SYSTEMS CORP., Donald R. Gilliatt, Richard O. Bragg and Marc S. Gilliatt, Appellees (Defendants Below).**

No. 80A04–8809–CV–316.

Court of Appeals of Indiana, Fourth District.

July 10, 1989.

Albert George, Indianapolis, for appellant.

Deborah L. Farmer, Jeffrey S. Nickloy, Campbell, Kyle, Proffitt, Noblesville, for appellees.

CHEZEM, Judge.

## Statement of the Case

The plaintiff-appellant, Vibromatic Co., Inc., appeals the denial of a Request for Protective Order. We reverse and remand.

## Issues

Vibromatic raises three issues:

(I) Whether the trial court abused its discretion when it denied the request of Vibromatic for an order prohibiting Xpert Automation Systems Corp., Donald R. Gilliatt, Richard O. Bragg, and Marc S. Gilliatt ("Xpert") from disclosing Vibromatic's alleged trade secrets to actual or potential non-party competitors.

(II) Whether the trial court was required to provide Vibromatic with an opportunity to make argument and to present adequate evidence on Vibromatic's oral modification of its motion for a protective order.

(III) If a remand is appropriate for the purpose of conducting an evidentiary hearing, what must Vibromatic prove in order to be entitled to a protective order?

## Facts

Vibromatic is in the business of manufacturing and selling vibratory parts-feeding machinery and equipment. One of the appellees, Donald R. Gilliatt was a shareholder, director and officer of Vibromatic. On June 17, 1978, he entered into a Stock Purchase and Restrictive Agreement where the parties acknowledged the existence of trade secrets and confidential information. On or about June 15, 1984, Donald resigned as director and officer and sold his stock to its present stockholders. Donald continued employment with Vibromatic as its Manager of Feeder Operations and entered into an Employment Agreement which likewise acknowledged the existence of trade secrets. At Donald's request, Vibromatic granted a Unilateral Waiver of Covenant Not to Compete in which the covenant period was changed from two (2) years from the date of termination of employment to "... a period of two (2) years from April 15, 1985." Donald gave notice of termination of his employment effective April 15, 1987.

On April 19, 1987, Marc S. Gilliatt who was in control of Vibromatic's production control, likewise terminated his employment. On April 20, 1987, Richard O. Bragg, production manager, also terminated his employment. Neither Marc nor Richard had employment agreements with Vibromatic.

On April 28, 1987, Donald, Marc, and Richard incorporated Xpert Automation Systems Corp., with their principal place of business in Noblesville. Vibromatic alleges that Xpert solicited Vibromatic's customers for sales of parts-feeding equipment and had employed Vibromatic's trade secrets and confidential information to complete the sales.

On July 1, 1987, Vibromatic filed suit. Discovery proceeded in the case; several hearings to resolve disputes over the parties' rights to certain discovery occurred. On May 16, 1988, Xpert advised the court and Vibromatic that Xpert wished to have outside parties, who are competitors within the parts-feeding industry, examine those processes, techniques, patterns, and methods which comprise Vibromatic's alleged trade secrets for the purpose of obtaining the opinions of such competitors as to whether those were in fact trade secrets. On June 30, 1988, Vibromatic filed a request for a protective order which reads in pertinent part:

> Come [sic] now, Vibromatic Co., Inc. ("Vibromatic") and moves the Court for a hearing on a dispute which has arisen between the litigants to this cause and respectfully shows the Court as follows:

> .    .    .    .    .

> (2) Counsel for Defendants and counsel for Vibromatic have further discussed the matter and counsel for Defendants has advised counsel for Vibromatic by letter dated June 16, 1988 as follows: "The second problem we face concerns the use of information obtained through the discovery process. We have asked Vibromatic to indicate what it claims to be its trade secrets. Once this is done we will review Vibromatic's claims. In every case in which my clients disagree

that information, or a technique, or process is truly a trade secret, we will want to find evidence to support Xpert's position. Clearly, the best way to learn if something is a trade secret is to ask other persons in the industry whether they are familiar with the information, techniques or processes. We expect to do this by way of informal investigation. We are not aware of any restriction on our use of your client's answers to our interrogatories, so this technique appears to be promising."

(3) Vibromatic avers that the method of discovery proposed by opposing counsel violates the understanding and stipulation that material designated "Confidential" would be disclosed to, and be for the use of, the litigants only and the proposed method of discovery permits the very conduct which is the gravamen of Vibromatic's complaint; i.e., to prevent disclosure and use of its methods, processes, trade secrets, etc. by others.

WHEREFORE, Vibromatic seeks an order to prevent such undertaking of the discovery proposed by Defendants and, if necessary, a hearing thereon.

At the hearing on August 26, 1988, Vibromatic orally amended its request for protective order. Vibromatic sought an order from the trial court which would prohibit Xpert from disclosing to any actual or potential non-party witness any information deemed confidential by previous order of the court, including without limitation, Plaintiff's answers to interrogatories. The trial court denied Vibromatic's request for protective order.

### Discussion and Decision

■ The scope of discovery is a matter highly dependant upon the facts of each case, and the fact-sensitive nature of discovery issues requires deference to the decision of trial courts. *Keystone Square Shopping Center v. Marsh Supermarkets, Inc.* (1984), Ind.App., 459 N.E.2d 420, 425. The grant or denial of motions for discovery rests within the sound discretion of the trial court and will be reversed only for an abuse of that discretion. *Id. citing*

*Campbell v. Eli Lilly & Co.* (1980), Ind. App., 413 N.E.2d 1054.

Vibromatic argues that the trial court abused its discretion when, during discovery, it summarily denied Vibromatic's request for an order to protect its alleged trade secrets from being revealed to non-party competitors.

■ Indiana adopted the Uniform Trade Secrets Act in 1982; the legislature intended the adoption of the Act to serve the public interest by providing relief for actual or threatened misappropriation of trade secrets. *Kozuch v. CRA–MAR Video Center, Inc.* (1985), Ind.App., 478 N.E.2d 110. The definition of a trade secret has been codified at Ind.Code 24–2–3–2:

> "Trade secret" means information, including a formula, pattern, compilation, program, device, method, technique, or process, that: (1) derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

An attempt to protect a trade secret would be futile if meritorious litigation would result in the disclosure of the trade secret. Galanti, *Business Associations*, 16 Ind.L. Rev. 25, 55. (1983); *See also*, Uniform Trade Secrets Act, 14 U.L.A. 541–551 (1980), commissioners' comment at 548–549. Accordingly, the Act provides for the preservation of the secrecy of an alleged trade secret. Ind.Code 24–2–3–6 reads:

> In an action under this chapter, a court shall preserve the secrecy of an alleged trade secret by reasonable means, which may include granting protective orders in connection with discovery proceedings, holding in-camera hearings, sealing the records of the action, and ordering any person involved in the litigation not to disclose an alleged trade secret without prior court approval.

Protection is also afforded by the Ind.Rules of Procedure. Trial Rule 26(C) provides:

(C) Protective Orders. Upon motion by any party or by the person from whom discovery is sought, and for good cause shown, the court in which the action is pending or alternatively, on matters relating to a deposition, the court in the county where the deposition is being taken may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:

. . . . .

(7) that a trade secret or other confidential research, development, or commercial information not be disclosed or be disclosed only in a designated way.

. . . . .

The statute *requires* the preservation by reasonable means of the secrecy of an *alleged trade secret,* and sets forth various options available to the trial court. Although Trial Rule 26(C) *does not require* the trial court to take affirmative action to preserve the alleged trade secret, the Rule acknowledges that *a trade secret* may need to be afforded some protection.

■ To the extent that there may be a procedural conflict between Ind.Code 24-2-3-6 and Trial Rule 26(C), the trial rule is controlling. *R.A. Augustine v. First Federal Savings & Loan Association of Gary* (1979), 270 Ind. 238, 384 N.E.2d 1018. In the context of this interlocutory appeal, however, any actual or perceived conflict between the statute and the trial rule is not dispositive.

Here, the question is how much protection must be afforded to a party requesting a protective order under Ind.Code 24-2-3-6? The trial court, in exercising its discretion, faces an arduous task. While preserving the confidentiality of the trade secret, the trial court must strike a balance which ensures that a defendant is provided sufficient information to present a defense yet permits the trier of fact sufficient information to resolve the dispute on the merits. *See* Galanti, *Business Associations, supra.*

■ Vibromatic filed its request for protective order on June 30, 1988. The hearing on Vibromatic's request was set for August 26, 1988 and was held as scheduled. At the hearing, Vibromatic orally modified its request; the oral motion was in response to Xpert's third set of interrogatories which specifically requested the disclosure of certain trade secrets. The hearing commenced first with arguments regarding Xpert's motion for summary judgment. Following that motion's disposition, the court then addressed Vibromatic's request. Vibromatic requested the opportunity to present testimony from Tom Terry, Vice President of Vibromatic in order to present testimony regarding the alleged trade secrets and possible damage that would occur if competitors were informed of those secrets. During his testimony, Xpert objected that the testimony was hearsay. The trial court did not expressly rule on Xpert's objection, but, because of time limitations, the court then terminated Terry's testimony.

We feel that it was necessary for the trial court in exercising its discretion to more thoroughly examine the critical nature of the proffered evidence. *Cf. Gates v. Rosenogle* (1983), Ind.App., 452 N.E.2d 467, 472–473. Here, without a thorough examination of the facts behind Vibromatic's motion, the court would allow Xpert to expose the very information that Vibromatic seeks to protect in the lawsuit. We agree with Vibromatic that "[i]t is one thing to carefully examine Vibromatic's claim of trade secrets by taking testimony, but then ruling in favor of Defendant's requested deposition [, and] it is quite another to permit exposure of the claimed trade secrets to other competitors without hearing the nature of the trade secrets and the danger of exposure." In sum, the trial court abused its discretion by ruling on Vibromatic's request for protective order without first holding a complete evidentiary hearing.

Because we have an insufficient factual context at this stage of the proceedings, it is not appropriate at this time to determine what Vibromatic must prove in order to be entitled to a protective order.

We reverse and remand to the trial court for further proceedings not inconsistent with this opinion.

MILLER and SULLIVAN, JJ., concur.