Raymond L. LUCAS, Jr. and Theresa
A. Lucas, Appellants–Plaintiffs,

v.

The DORSEY CORPORATION and Dorsey Trailers, Inc., Delphi Body Works (Inc.), Appellees–Defendants,

Daro Ltd., and Gary W. Wilson and Darlene Wilson d/b/a Midwest Hydraulic, Defendants.

No. 72A01–9112–CV–405.

Court of Appeals of Indiana,
First District.

March 10, 1993.

Transfer Denied May 27, 1993.

David W. Stone, IV, Stone Law Offices & Legal Research, Anderson, David W. Paugh, Montgomery, Elsner & Pardieck, Seymour, for appellants-plaintiffs.

James D. Witchger, Rocap, Witchger & Threlkeld, Indianapolis, for appellee-defendant Delphi Body Works, Inc.

Cory Brundage, Bette J. Dodd, Ice Miller Donadio & Ryan, Indianapolis, for appellees-defendants The Dorsey Corp. and Dorsey Trailers, Inc.

1. IND.CODE § 33–1–1.5–1 *et seq.*

RATLIFF, Senior Judge.

## STATEMENT OF THE CASE

Raymond L. Lucas, Jr. and Theresa A. Lucas (collectively "Lucas") appeal from summary judgment entered in favor of The Dorsey Corporation and Dorsey Trailers, Inc. ("Dorsey") and Delphi Body Works (Inc.) ("Delphi") in an action for personal injury damages suffered as the result of a large auger falling upon Raymond. We affirm in part, reverse in part, and remand.

## ISSUES

We restate the issues on appeal as follows:

1. Did the trial court abuse its discretion in failing to strike the affidavit of Lucas's expert witness, when Lucas failed to comply promptly with Ind.Trial Rule 26's duty to update discovery responses?

2. Did the trial court err in granting Delphi's motion for summary judgment concluding that there was no material issue of fact regarding Lucas's negligence or product liability claims?

3. Did the trial court err in granting Dorsey's motion for summary judgment and concluding that as a matter of law Dorsey neither owed Lucas a duty nor was a "seller" within the purview of Indiana's Products Liability Statute? [1]

## FACTS

Indiana Bell solicited bids for the purchase of utility trucks equipped with digger derricks. Delphi's bid was ultimately successful. On January 11, 1979, Delphi ordered five (5) derricks manufactured by the Holan Division. The Holan derricks were to be placed on the utility trucks ordered by Indiana Bell. Daro Ltd. acquired the Holan Division from Ohio Brass Company. Daro, however, went into bankruptcy and Dorsey purchased the assets of the Holan Division in a sale which was approved by the bankruptcy court on July 12, 1979. Subsequently, Delphi received an invoice for the Holan derricks directing that payment be sent to Dorsey. Delphi received

the Holan derricks on September 28, 1979. The Holan derricks were installed on the utility trucks Indiana Bell ordered.

Lucas was employed as a lineman with Indiana Bell. A lineman's duties include the installation of utility poles. To install a utility pole a lineman first digs the hole. After the hole is dug with the auger, which is located on the derrick unit, a cable is attached to the auger's neck. The operator of the derrick then rotates the auger which winds the cable around its neck and pulls the auger up to the boom. The boom contains two safety latches, a primary and secondary latch, to secure the auger once it is wound up against the cradle of the boom. The latches either can be opened automatically as the auger is raised into position or they can be opened manually. After the auger is in the boom cradle, the boom is lowered and a safety pin is inserted to secure the auger should the latches malfunction.

On July 17, 1984, Lucas and his partner were dispatched to an area outside Fairland, Indiana to repair a broken utility pole. They determined that further assistance was required and two more trucks were dispatched. A bucket truck was used to secure the telephone cables and the boom on Lucas's truck was used to remove the broken pole. The driver of the other utility truck, Cindy Page, used the Holan derrick to clean out the hole so a new pole could be installed. After the hole was dug out, Lucas was in the process of inserting a safety pin to complete securing the auger when the cable broke and the auger fell, striking him. Page was running the engine at about ⅓ of its speed when the cable broke. The Holan derrick was equipped with a dump valve as a safety feature which was to divert hydraulic fluid when the switch was activated by contact with the auger that was being raised. However, the dump valve has a slower reaction time when the engine is run at a higher rate of speed than when it is run at idle speed.

On November 26, 1985, Lucas filed a complaint, which was later amended. On January 14, 1991, Delphi filed its motion for summary judgment in which Dorsey joined. The trial court granted Dorsey's motion for summary judgment on September 23, 1991. On the same day the court set an additional hearing on Delphi's motion. On November 7, 1991, Delphi's summary judgment was also granted. Lucas filed a motion to correct error which was denied. Lucas now appeals. Dorsey and Delphi cross-appeal.

## DISCUSSION AND DECISION

*Issue One*

■ Dorsey and Delphi contend the trial court abused its discretion in failing to strike the affidavit of Lucas's expert witness, John M. Howard, when Lucas failed to comply promptly with the duty to update discovery responses imposed by T.R. 26. Prior to dealing specifically with the facts relating to this issue, we make some general observations concerning appellate review of a trial court's rulings on discovery issues. A trial court has broad discretion in ruling on issues of discovery and we will interfere only where an abuse of discretion is apparent. *Keesling v. Baker & Daniels* (1991), Ind.App., 571 N.E.2d 562, 566–68, *trans. denied.* To obtain reversal of a trial court's discovery order, the moving party must show prejudice. *Coster v. Coster* (1983), Ind.App., 452 N.E.2d 397, 400. Review of an exercise of judicial discretion must be made in view of the facts and the circumstances of the case. *Fulton v. Van Slyke* (1983), Ind.App., 447 N.E.2d 628, 636, *trans. denied.* With these general principles in mind, we turn to a consideration of the underlying facts and circumstances relevant to this issue.

■ Lucas filed his initial complaint in September of 1985. In early 1986, Delphi attempted to obtain the name, address, opinions, and conclusions of any expert witnesses. On April 4, 1986, Lucas responded in interrogatory answers that he had no expert as of that time. Record at 1525. On May 1, 1986, Lucas hired Howard, a human factors expert, as a "consultant." Record at 1692. As early as September 12, 1986, Lucas's answers to Delphi's interrogatories identified John Howard as an expert. However, Lucas did not supply the

substance of Howard's expert opinion in these answers because Howard's evaluation of the vehicle was alleged to be continuing.

On March 8, 1990, Dorsey served three additional interrogatories on Lucas. One interrogatory specifically asked for Howard's expert opinion. From April to August of 1990, Lucas sought and obtained six enlargements of time to respond. Lucas finally provided Dorsey and Delphi with Howard's expert opinion in an affidavit twelve days prior to the consolidated hearing on the defendants' motions for summary judgment, held July 23, 1991.

We indeed are appalled by the delay in responding to the legitimate discovery requests of Delphi and Dorsey. Lucas's only explanation for his recalcitrance is that, although Howard was employed by him in early 1986, he had not received Howard's conclusions. Lucas's answers to Delphi's interrogatories disclose that Howard examined the vehicle as early as 1986. Lucas's counsel explained that the nearly five year delay in providing Delphi and Dorsey with Howard's expert opinion was a result of counsel's own inability to get his expert "up to date" and himself "up to speed" in this case until after a motion for summary judgment had been filed. This is hardly the degree of diligence which the Trial Rules envision.

■ Discovery under our trial rules is designed to be self-executing with little, if any, supervision by the trial court. *Chrysler Corp. v. Reeves* (1980), Ind.App., 404 N.E.2d 1147, 1151, *trans. denied.* Delphi and Dorsey served Lucas with three sets of interrogatories regarding Lucas's expert witness before Lucas provided Delphi and Dorsey with Howard's opinions and conclusions. Neither repetitive interrogatories nor motions to compel are required where the trial rules impose an affirmative duty to supplement a discovery request and to provide the substance of an expert's testimony. Ind.Trial Rule 26(E)(1)(b); *State v. Kuespert* (1980) Ind.App., 411 N.E.2d 435, 437.

■ The duty seasonably to supplement a discovery response is absolute and is not predicated on a court order. *Lewis v. Darce Towing Co.* (W.D.La.1982), 94 F.R.D. 262, 266. It is a breach of a litigant's duty seasonably to supplement if the litigant postpones supplementing its response by not obtaining from its experts the information which is to be supplied in answer to interrogatories. *Ferrara v. Balistreri & DiMaio, Inc.* (D.Mass.1985), 105 F.R.D. 147, 150 (construing Fed.R.Civ.P. 26(e), which is virtually identical to Ind.Trial Rule 26(E)).

Given the foregoing pronouncements and considering what we view to be a serious lack of diligence on the part of Lucas's counsel, we nevertheless do not find reversible error. We note that rather than request a continuance to review the affidavit, Dorsey and Delphi moved to strike the affidavit. *See Marathon Petroleum Co. v. Colonial Motel Properties, Inc.* (1990), Ind.App., 550 N.E.2d 778, 781; *see also City of Evansville v. Rieber* (1979), 179 Ind.App. 256, 261, 385 N.E.2d 217, 221–22 (failing to move for continuance waived objection that unlisted witness should not be allowed to testify). Moreover, no date for the conclusion of discovery had been set. Under these circumstances the trial court did not abuse its discretion when it denied Dorsey and Delphi's motion to strike the affidavit.

■ Although absence of a discovery deadline does not relieve a party of the duty of seasonably supplementing discovery responses,[2] such is a relevant factor in our appellate review particularly as it bears upon the question of abuse of discretion. Likewise, although there was no burden upon Dorsey and Delphi to seek court ordered compliance with Lucas's discovery duties, the fact they did not also is relevant to our decision.

■ Delphi's reliance on *Brown v. Terre Haute Regional Hospital* (1989), Ind.App., 537 N.E.2d 54, and *Beird v. Figg & Muller Engineers, Inc.* (1987), Ind.App.,

---

**2.** See the recent decision of our supreme court in *McCullough v. Archbold Ladder Co.* (1993),

Ind., 605 N.E.2d 175, 180, regarding the duty to update and supplement discovery responses.

516 N.E.2d 1114, is misplaced. These cases concluded that there were no abuses of discretion in the trial courts' grants of motions to strike; this is far different from finding the trial court abused its discretion. *Brown*, 537 N.E.2d at 58; *Beird*, 516 N.E.2d at 1120–23. The mere fact that the trial court might not have abused its discretion if it had granted the motion to strike the affidavit does not necessarily mean that the denial of such a motion constitutes an abuse of discretion. *See Fulton*, 447 N.E.2d at 636 (fact that trial court would not have abused its discretion in granting Ind.Trial Rule 60(B) motion does not mean that denial of motion was abuse of discretion).

Further, neither Dorsey nor Delphi has articulated any specific prejudice resulting from the trial court's denial of their motion to strike Howard's affidavit because of the delay in providing it. General statements of prejudice because they were hampered in their ability to cross-examine or rebut Howard's theories, Dorsey's brief at 44, or in deposing other witnesses, Delphi's brief at 11, without more, are insufficient to establish a clear abuse of discretion by the trial court.

■ In sum, while we do not condone the disregard for the rules of discovery exhibited by counsel for Lucas and by the apparent lack of diligence manifested in this case, we cannot say the trial court abused its discretion. When reviewing a trial court's ruling on a discovery matter, we reverse only for an abuse of discretion. *Hudgins v. McAtee* (1992) Ind.App., 596 N.E.2d 286, 289. Due to the fact-sensitive nature of such issues, discovery rulings are cloaked with a strong presumption of correctness on appeal. *Vibrometic Co. v. Xpert Automatic Systems Corp.* (1989) Ind.App., 540 N.E.2d 659, 661.

■ Dorsey argues that the affidavit is inadmissible pursuant to Ind.Trial Rule 56(E). T.R. 56(E) provides that "affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testified to the matters therein." An expert's testimony is admissible if the expert has some special knowledge which would assist the trier of fact. *Cox v. American Aggregates, Corp.* (1991), Ind.App., 580 N.E.2d 679, 686, *trans. denied.* A trial court has broad discretion in determining an expert's qualifications and admitting opinion evidence. *Id.*

Here, Dorsey and Delphi do not contest Howard's qualifications as a human factors expert; rather, they focus on his opinion. In the affidavit Howard stated that after reviewing various affidavits, Indiana Bell's accident report, various documents, the operation manual, and viewing the auger and its control panel, it was his opinion that the users were not adequately instructed on safety procedures; were not adequately warned of the dangers of stowing the auger at greater than idle speed; and, the control panel for the auger did not have proper instructions on safe use or warnings. Record at 1692–95. Howard also expressed an opinion that the secondary latch and the hydraulic shutoff valve were not properly designed. *Id.* at 1695. Howard opined that these factors were a contributing cause of the accident. *Id.* Howard's testimony would be admissible in evidence; hence, the trial court did not abuse its discretion in denying the motion to strike the affidavit. *See Cox*, 580 N.E.2d at 686. Howard's use of the phrases "defective and dangerous" and "contributing causes," *see* Record at 1692 and 1695, does not necessitate the striking of the affidavit. Dorsey is also erroneous in its assertion that Howard's use of the word "fail safe design," *see* Record at 1695, attempts to make the defendants insurers of the product. Howard merely asserted his opinion of the design of the latch system from a human factors stand point. Dorsey and Delphi show no error.

*Issue Two*

When reviewing the propriety of a ruling on a motion for summary judgment, this court applies the same standard applicable to the trial court. *Houin v. Burger* (1992), Ind.App., 590 N.E.2d 593, 596, *trans. denied.* We must consider the pleadings and evidence sanctioned by Ind.Trial Rule 56(C)

1198 ■ 

without determining weight or credibility. *Id.* Only if such evidence shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law should summary judgment be granted. *Id.* The movant bears the burden of proving the propriety of summary judgment, and all facts and inferences to be drawn therefrom are viewed favorably to the non-movant. *Id.* Summary judgment will be affirmed on appeal if it is sustainable on any theory or basis found in the evidentiary matter designated to the trial court. T.R. 56(C).

■ Lucas contends that the trial court erred in entering summary judgment in favor of Delphi. More specifically, Lucas argues that there are material issues of fact as to whether Delphi was negligent in the design, manufacturing, assembly, or installation of the derrick. A negligence action is rarely appropriate for summary judgment. *Jump v. Bank of Versailles* (1992), Ind.App., 586 N.E.2d 873, 875. In order to prevail in a negligence action, the plaintiff must establish that the defendant breached a duty owed to him which proximately caused the injury. *Rubin v. Johnson* (1990), Ind.App., 550 N.E.2d 324, 328–329, *trans. denied; Ogden Estate v. Decatur County Hospital* (1987), Ind.App., 509 N.E.2d 901, 902, *trans. denied.*

■ A duty of care exists when one party assumes such a duty, either gratuitously or voluntarily. *Plan–Tec, Inc. v. Wiggins* (1983), Ind.App., 443 N.E.2d 1212, 1219. The assumption of a duty creates a special relationship between the parties and a corresponding duty to act as a reasonably prudent person. *Id.* With regard to design, manufacture, assembly, or installation of the derrick, Delphi breached no duty of care. Delphi did not design and was not the manufacturer of the derrick. Although Delphi did install the derrick on to the utility truck and it is unclear whether Delphi assembled the derrick in any way, there were no inferences presented to draw a conclusion that installation or any possible assembly by Delphi was performed improperly.

■ Lucas also contends that the trial court erred in granting summary judgment

in favor of Delphi on his claims of negligent failure to warn and strict liability for selling an inherently dangerous product. Lucas's claim for negligence rests upon inadequate operating instructions and warnings of the dangers of stowing the auger. To succeed Lucas must establish 1) that Delphi supplied to Indiana Bell for use by its employee, a product with a concealed danger; 2) Delphi knew or had reason to know of the danger; 3) Delphi failed to adequately warn of the danger; and, 4) the failure to warn was a proximate cause of Lucas's injuries. *See Jarrell v. Monsanto Co.* (1988), Ind.App., 528 N.E.2d 1158, 1161, *trans. denied.* Delphi's task was to show the uncontroverted nonexistence of at least one of these elements. Delphi has failed.

It is undisputed that Delphi supplied Indiana Bell with the derrick-equipped utility truck. Hence, we must determine if there was a concealed danger. Although Lucas stated that it was common knowledge that it was dangerous to step underneath the boom when the auger was being stowed, Lucas stated in his deposition that on the day of the incident the safety latch had closed and the auger had stopped turning when he reached for the safety pin which had been set on the back of the utility truck. Record at 1953, 1955, and 1958. Further, Lucas was not aware of any complaints regarding the safety latch. Record at 1927. Cindy Page stated in a report after the incident that Lucas reached for the safety pin "after the auger had reached the safety catch." Record at 2250. Page, however, stated in her deposition that she could not say for certain that the safety latch had closed and she opined that the dump valve, which stops the auger from spinning, was not working because if it had the cable would not have broken. Record at 2208 and 2239. The facts present permissible contrary inferences not amenable to summary judgment. A reasonable trier of fact might find either that Lucas should have perceived the danger or that as to him the danger was concealed. *See Jarrell*, 528 N.E.2d at 1162. There are also facts from which the trier of fact could infer that Delphi knew or should have

known of any danger. Lucas presented sufficient evidence to create a question as to whether Delphi had a duty to warn of danger.

If Delphi is found to have a duty to warn, it then must be determined if Delphi fulfilled its duty by adequately warning of the danger. The adequacy of warnings is usually a question for the trier of fact and therefore, inappropriate for summary judgment. *Id.* As we have previously stated:

> " 'The warning should be of such intensity to cause a reasonable man to exercise for his own safety caution commensurate with the potential danger.' We must therefore consider the adequacy of the factual context, the adequacy of the manner in which that context is expressed, and the adequacy of the method of conveying these expressed facts."

*Id.* at 1162–63 (quoting *Ortho Pharmaceutical Corp. v. Chapman* (1979), 180 Ind. App. 33, 388 N.E.2d 541, *trans. denied*).

Here, the operating manual instructed on the proper method for stowing the auger. Record at 163. The directions included language which stated *"NOTE:* While stowing auger operate engine at *Idle Speed Only* !!!" Record at 163. Page testified that she was instructed on how to properly stow an auger while attending a two week course provided by Indiana Bell. Record at 2224–26. Page also testified that she learned by watching others that the operating speed of the auger when stowing should be slow; however, she did not know why. Record at 2167–68. Lucas's expert witness, Howard, filed an affidavit wherein he opined: the operating manual did not adequately instruct users in the proper and safe procedure for auger stow; the operating manual was not available on the vehicle; Lucas and Page never received any written instruction on how to operate the derrick; Lucas and Page did not know a manual existed; the manual did not adequately warn users of the dangers of stowing the auger at greater than idle speed, or in a non reverse direction; the procedure in the manual for stowing the auger does not indicate why it is important to operate the engine at idle speed only; the manual was void of language indicating potential injury; the control panel for the derrick should have been permanently labeled advising the user of the manual and the importance of reading it; the control panel for the auger should have had a warning to stow only at idle speed and the danger of failing to adhere to the warning; the control panel of the auger [derrick] should have a warning advising the user to stow the auger only by winding the auger in the reverse direction; the control panel for the auger [derrick], the rear of the utility truck, and the area in the vicinity of the safety latch should have a warning instructing persons not to go near the auger until both the primary and the secondary latches have been closed and secured. Record at 1692–95. Because a genuine issue of material fact exists as to the adequacy of the warnings and instructions, the trial court erred in granting summary judgment thereon.

■■■■ The final element of Lucas's negligence claim is proximate cause. A fundamental element of proximate cause "is that the injury or consequence of the wrongful act be of a class reasonably foreseeable at the time of the act." *Ortho,* 180 Ind.App. at 54, 388 N.E.2d at 555. The defendant's act need not be the sole proximate cause; many causes may influence a result. *Id.* Rather, the question is whether the wrongful act is one of the proximate causes rather than a remote cause. *Id.* Proximate cause is generally a question for the trier of fact. *Id.*

Delphi argues that Howard's affidavit is insufficient to create a material question of fact as to whether any failure to properly instruct or warn of possible dangers was the proximate cause of Lucas's injuries. Delphi specifically points to language in the affidavit which states that in Howard's professional opinion as a human factors expert, "that the defects noted above [i.e., failure to adequately instruct and warn on the proper method for stowing the auger] were contributing causes of this accident and Mr. Lucas's injuries." Record at 1695. Howard's use of the words "contributing cause," rather than "proximate cause" is

not dispositive. Howard is an expert witness and it would be overly burdensome to require him to be cognizant of proper legal terminology. *Cf. Noblesville Casting Division of TRW v. Prince* (1982), Ind., 438 N.E.2d 722, 725–29 (expert medical witness not required to use exact words for his testimony to be admissible or to have probative value). Failure by Howard to use the proper legal term does not negate the proximate cause element of Lucas's claim.

Delphi further contends that the element of proximate cause [3] was negated by evidence that misuse and alteration caused the accident, rather than any negligence on its part. Delphi points to Page's deposition testimony that Indiana Bell employees would hit the latch with a hammer to support its contentions. Record at 2165, 2192, and 2226. Page, however, did not know over what period of time this happened. *See* Record at 2226. Further, Lucas stated that the latch was closed when he reached for the safety pin on the day he was struck by the auger. Record at 1955 and 1958. Gary Wilson, hired by Indiana Bell to repair its equipment, testified the secondary latch and the auger were bent. Record at 814–19. Although we agree with Delphi that a jury could infer that that alteration or repairs to the auger were the cause of the incident, it also could infer that a failure of the dump valve, that the auger was wound at greater than idle speed, or inadequate instructions and warnings were proximate causes. Ultimately we cannot say as a matter of law which of the various factors proximately caused Lucas's injuries. *See, e.g., Capasso v. Minster Machine Co.* (3d Cir.1972), 532 F.2d 952, 954–55 (question of whether inadequate device installed by buyer was proximate cause is question for jury); *Finnegan v. Havir Manufacturing Corp.* (1972), 60 N.J. 413, 425, 290 A.2d 286, 292 (where punch press manufactured and sold in 1949 with no safety devices other than guard over flywheel, and which, as originally manufactured, was operated by foot pedal but which subsequently was modified by installation of electrical foot

pedal device, it was question of fact as to whether substitution of foot pedal was such substantial change under Restatement, Torts Second § 402, as to relieve manufacturer of strict liability; also, question of fact whether alteration was intervening cause under negligence). We conclude that the trial court erred when it granted Delphi summary judgment upon Lucas's negligence claim. Similar considerations militate the same conclusion on Lucas's products liability claim.

■ Products liability actions in Indiana are governed by IND.CODE § 33–1–1.5–1 *et seq.* A supplier who places into the stream of commerce any product in a defective condition unreasonably dangerous to any user or consumer is subject to liability for physical harm caused by that product if the user or consumer is within the class of people that the seller reasonably foresees and the product reaches the user without substantial change in its condition. *Jarrell*, 528 N.E.2d at 1165–66; *Ortho*, 180 Ind.App. at 37–38, 388 N.E.2d at 545. Under IND.CODE § 33–1–1.5–2.5, a product is defective if the seller fails to: "(1) properly package or label the product to give reasonable warnings of danger about the product; or (2) [g]ive reasonable complete instructions on proper use of the product when the seller, by exercising reasonable diligence, could have made such warnings or instructions available to the consumer." Delphi contends that it negated the essential element of proximate cause as to Lucas's products liability claim. As we have previously determined there are genuine issues of material fact regarding this element, the trial court thus also erred in granting summary judgment on this claim.

*Issue Three*

■ Dorsey contends that it owed no duty to Lucas and therefore the trial court correctly entered summary judgment in its favor. Lucas urges that there is a genuine issue of material fact as to whether Dorsey assumed a duty to provide ade-

---

**3.** Delphi argues that misuse and alteration negate the "breaching" element of Lucas's negligence claim; however, we conclude that misuse and alteration are applicable instead to the question of whether Delphi's, negligence, if any, was the proximate case of Lucas's injuries.

quate warnings and instructions regarding the derrick's use. We agree with Lucas that the designated evidence is sufficient to present a jury question as to whether Dorsey assumed a duty. A duty of care arises when a party voluntarily or gratuitously assumes such a duty. *Phillips v. United Engineers* (1986), Ind.App., 500 N.E.2d 1265, 1269. The assumption of a duty creates a special relationship between the parties and a corresponding duty to act in the manner of a reasonably prudent person. *Id.* Whether a party has assumed a duty and the extent, if any, of such duty, are questions for the trier of fact. *Id.*

Here, the derrick was purchased by Delphi from Daro Corporation pursuant to a January 17, 1979 purchase order. The derrick was subsequently placed into production and manufactured by Daro sometime after January 1979. Daro went bankrupt and on July 14, 1979, Dorsey purchased the assets of the Holan Division of Daro which had manufactured the derrick. On August 18, 1979 the derrick in question was shipped to Delphi. In total, Dorsey shipped nine (9) derricks which had originally been ordered through Daro. Dorsey subsequently discontinued the derrick product line. Delphi received an invoice for the derricks it had ordered, dated September 25, 1979, directing payment be made to Dorsey. Delphi received the derrick at issue on September 28, 1979. Each page of the operating and instruction manual that accompanied the derricks bore Dorsey's name and address as did the warranties for all five of the derricks shipped to Delphi. *See* Record at 624, 632–722, and 1352–56. Dorsey's name also appears within the text of the manual. For example, the third page of the manual states: "Dorsey trailers, Holan Division will not accept responsibility for alterations or modifications to this equipment except through the expressed written consent of the Holan Engineering department." Record at 634. In Section IV of the manual the name Ohio Brass Company is struck out and Dorsey Trailers printed above it. Record at 658. From this evidence a jury could infer that Dorsey by sending out instruction manuals and warranties with its name and address

appearing on each page assumed a duty of care to adequately warn and instruct users on the safe use of the derrick, more specifically stowing the auger.

As to Lucas's claim of negligent design or manufacturing, Dorsey argues that it neither designed nor manufactured the derrick, and therefore it had no duty to Lucas. A vendor that holds itself out as a manufacturer of a product and labels the product as such is held to the same standard of care in design, manufacture, and sale of the product as if it were in fact the manufacturer. *See Dudley Sports Company v. Schmitt* (1972) 151 Ind.App. 217, 224, 279 N.E.2d 266, 273, *trans. denied.* Arguably, a trier of fact could find that Dorsey by placing its name on the operating manual and warranty held itself out as the manufacturer of the derrick. The fact that Dorsey and its predecessor, Daro, had an agreement whereby Dorsey was not to assume Daro's liabilities is not dispositive. *See Cyr v. B. Offen & Company Inc.* (1st Cir.1974), 501 F.2d 1145, 1152–54 (purchase agreement exonerating purchaser not determinative of third party rights); *cf. Vernon Fire & Casualty Insurance Co. v. Graham* (1975), 166 Ind. App. 509, 512, 336 N.E.2d 829, 832 (exculpatory provision in contract ineffective to exonerate persons from liability to one not party to agreement).

The evidence is sufficient to present a jury question as to whether Dorsey had a duty to Lucas. Further, Dorsey's contention that Lucas knew of the dangers of stowing the auger misses the mark, as it was Page, not Lucas, operating the derrick. Although Page stated that she knew that the derrick was to be stowed at slow speed, *see* Record at 2168, this does not necessarily equate with stowing the derrick at idle speed or that she "knew" of the dangers of failing to do so. Additionally, Lucas stated that the safety latch had closed at the time he reached for the safety pin. *See* Record at 1955 and 1958. Therefore, we reverse the trial court's grant of summary judgment as to both the claims of negligent warning and instruction, and negligent design.

■ Dorsey also contends that the trial court correctly granted summary judgment in its favor on Lucas's strict liability claim because it was not a "seller" of the derrick. The Products Liability Statute applies to a seller of a defective product provided the seller is "engaged in the business of selling such a product." *See* IND.CODE § 33–1–1.5–3(a)(1). However, the occasional seller who is not engaged in that activity as part of his business is not liable in products liability. *Perfection Paint v. Konduris* (1971), 147 Ind.App. 106, 117, 258 N.E.2d 681, 686. Thus, for example, the statute does not apply to a homemaker who sells a jar of jam or a person who sells his used car to his neighbor. Restatement Second of Torts § 402A, comment (f); *but cf. Hartman v. Opelika Machine & Welding Co.* (1982), Fla.App., 414 So.2d 1105, 1106–07, *petition denied*, 426 So.2d 27 (manufacturer of spin buggy used in textile manufacturing by employee who fell when handle broke engaged in business of selling product although buggy made to employer's specifications and sold only to single purchaser).

Viewing the evidence in the light most favorable to the party opposing the motion for summary judgment, as we must, the evidence presented demonstrates the existence of a genuine issue of material fact as to whether Dorsey was in fact engaged in the business of selling derricks. Dorsey points out that four of the derricks were returned, it scrapped the returned derricks rather than resell them, and that it discontinued the derrick product line upon purchasing Daro's assets, to support its contention that it was not a seller within the meaning of Indiana's Products Liability Statute. Nevertheless, we cannot say as a matter of law that the sale of only nine (9) derricks, four (4) of which were returned, as a matter of law negates a finding that Dorsey was a seller. Dorsey's reliance on *Sukljian v. Charles Ross and Son Co.* (1986), 69 N.Y.2d 89, 503 N.E.2d 1358, 511 N.Y.S.2d 821, as controlling is misplaced, as it is factually distinguishable. In *Sukljian*, a corporation sold a single machine that it had previously used in its own production for eleven (11) years, as surplus property. *Id.* at 95–97, 503 N.E.2d at 1361–62, 511 N.Y.S.2d at 823–25. The evidence, here, does present a jury question as to whether Dorsey was a "seller" within the purview of the Products Liability Statute. Therefore, we reverse the trial court's grant of summary judgment in favor of Dorsey as to Lucas's claim sounding in strict liability.

We affirm in part, reverse in part, and remand for further proceedings consistent with this opinion, noting that this determination in no way portends a positive outcome for Lucas at trial; rather, we merely hold that issues of material fact exist which preclude summary judgment. *See Jones v. Berlove* (1986), Ind.App., 490 N.E.2d 393, 395 (mere improbability of recovery at trial does not justify summary judgment against plaintiff).

Affirmed in part, reversed in part, and remanded.

BAKER and NAJAM, JJ., concur.