

FILED

Apr 12 2023, 9:14 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Keith W. Vonderahe
Dirck H. Stahl
Ziemer, Stayman, Weitzel &
Shoulders, LLP
Evansville, Indiana

ATTORNEYS FOR APPELLEES

Terry Noffsinger
Kyle Noffsinger
KOOI Law Firm, LLC
Noblesville, Indiana

S. Anthony Long
Long Law Office, PC
Boonville, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Evansville Automotive, LLC,
d/b/a Kenny Kent Toyota,

*Appellant-Defendant,*

v.

Samantha M. Labno-Fritchley,
individually; as next friend of
Penelope Rose Fritchley, a
minor; and as personal
representative of the estate of
John Henry Fritchley II,
deceased,

*Appellees-Plaintiffs.*

April 12, 2023

Court of Appeals Case No.
22A-CT-1601

Interlocutory Appeal from the
Vanderburgh Circuit Court

The Hon. David D. Kiely, Judge

Trial Court Cause No.
82C01-1901-CT-338

**Opinion by Judge Bradford.**

**Judges May and Mathias concur.**

**Bradford, Judge.**

# Case Summary

In February of 2018, Boonville resident John Fritchley II attempted to remove the top of an empty fifty-five-gallon, metal drum (in particular, "the Drum," generally, "drums") with a cutting torch when it exploded, blowing the top off of the Drum and killing him instantly. The top of the Drum—down at which John had to have been looking as he cut—bore a warning label, which included a red pictogram of a flame with the words "FLAMMABLE LIQUID" and also provided, *inter alia*, "Do not flame cut, braze or weld empty container." Investigation of the incident revealed that the Drum had previously been in the possession of Superior Oil Company, Inc., d/b/a Superior Solvents and Chemicals, Inc. ("Superior"), who had filled it with a flammable brake-cleaning solution called S-1693. From Superior, the Drum had passed to distributor Busler Enterprises, Inc. ("Busler"), whose customers for S-1693 included Evansville Automotive, LLC, d/b/a Kenny Kent Toyota ("Kenny Kent"). As it happens, Kenny Kent had allowed Paul Rhoades—also a Boonville resident—to collect its empty drums for some time, apparently for resale.

In December of 2018, Samantha M. Labno-Fritchley, John's widow, filed suit against Superior, Busler, and Kenny Kent on her behalf, as next friend of her and John's daughter, and as personal representative of John's estate (collectively, "Samantha"). Samantha's suit included allegations of negligence, violations of the Indiana Products Liability Act ("the Act"), negligent infliction

of emotional distress, and wrongful death.  Kenny Kent moved for summary judgement, which motion the trial court denied in April of 2022.  Kenny Kent contends that the trial court erred in denying its summary-judgment motion on the grounds that (1) the Act does not apply because it is not in the business of selling drums, (2) it had no duty of care to John, (3) there is no designated evidence that it ever had the Drum in its possession, and (4) the designated evidence establishes as a matter of law that John was more than fifty percent at fault.  Because we agree with Kenny Kent's contentions that the Act does not apply and that the designated evidence establishes that John was more than fifty percent at fault as a matter of law, we reverse and remand with instructions to enter summary judgment in favor of Kenny Kent.

# Facts and Procedural History

[3]     On February 11, 2018, sadly, John was in the process of removing the top from the Drum with a cutting torch at his Boonville residence when it exploded, propelling the lid upwards, which struck him in the head, killing him instantly.  According to a report filed by Warrick County Sheriff's Deputy Jarrett Busing, "the explosion caused the [top[1]] of the drum to pop off and this made contact with the deceased."  Appellant's App. Vol. III p. 23.  Samantha later recalled that "John purchased the [Drum] and when he got home he set it up in front of the garage door, ran the hose to it, and attempted to cut the lid off with a

---

[1]  Deputy Busing later learned that what he had believed was the bottom of the Drum was actually the top.

cutting torch." Appellant's App. Vol. VI p. 182. At the time of his death, John was employed by Alcoa USA Corporation ("Alcoa") and had been for at least fifteen years. At Alcoa, John had received training for and had worked with: combustible dust; critical risk management; fire prevention, protection, and extinguishers; hazard communication; performing hot works and hot-work permit refresher training module; tri-annual refresher training; workplace critical hazard refresher training; and workplace health hazards. John's hot-works training had provided, *inter alia*, that sparking tools could be an ignition source and that one should "[n]ever cut or weld on a drum" because "[h]ot work performed on piping, tanks, vessels, containers, and confined spaces that contain or *previously contained* a hazardous, flammable or combustible liquids can explode" and "[*p*]*iping, tanks and vessels can explode!!!!!!*" Appellant's App. Vol. VII p. 62 (first emphasis added; second emphasis in original).

[4] After exploding, the Drum essentially remained intact but for the top. The warning label on the top had also remained intact and included a prominent pictogram in red of a flame with the words "FLAMMABLE LIQUID" underneath. Appellant's App. Vol. II p. 11. The warning label also provided, in part, as follows:

**ATTENTION! This container hazardous when empty.**
Since empty containers retain product residues (vapor or liquid) all labelled hazardous precautions must be observed. Do not flame cut, braze or weld empty container. Do not reuse "EMPTY PACKAGE" without commercial cleaning or reconditioning Store empty container away from heat and flame.

Appellant's App. Vol. II p. 175.  The entire label, in which the above warning is circled in red, appeared as follows:



Appellant's App. Vol. II p. 11.  Prior to the explosion, the warning label had looked approximately like this:



Appellant's App. Vol. III p. 177. So, before the explosion, the label had also provided that the Drum had contained "S-1693 Solvent Blend," or "Heptane Isopropanol," a "Flammable Liquid," and "Highly flammable liquid and vapor." Appellant's App. Vol. III p. 177.

[5] Regarding the source of the S-1693, the Drum's label indicated that it had been manufactured by Superior Oil. Superior Oil sells S-1693 to Busler, an industrial commercial distribution customer. Before delivery to Busler, Superior Oil fills drums with the S-1693 and affixes warning labels to the drums. Among Busler's S-1693 customers is Kenny Kent, an automobile dealership in Evansville that also has a service center.

[6] John's death was investigated by the Indiana Department of Environmental Management ("IDEM") and the Warrick County Sheriff's Department. During the investigation, it was learned that Kenny Kent had, for some time, allowed Rhoades to collect its empty drums, at first only plastic drums that had contained windshield-cleaning fluid but eventually also some metal drums that had contained S-1693.

[7] On December 6, 2018, Samantha brought suit against Kenny Kent, Superior, and Busler seeking money damages for alleged negligence and violation of the Act. In January of 2019, the Warrick Circuit Court transferred the case to the Vanderburgh Circuit Court. On November 8, 2021, Kenny Kent moved for summary judgment. On December 8, 2021, Samantha filed her response and designation of evidence opposing Kenny Kent's summary-judgment motion. On April 7, 2022, after an oral argument the week before, the trial court denied Kenny Kent's summary-judgment motion.

# Discussion and Decision

[8] When reviewing the grant or denial of a summary-judgment motion, we apply the same standard as the trial court. *Merchs. Nat'l Bank v. Simrell's Sports Bar & Grill, Inc.*, 741 N.E.2d 383, 386 (Ind. Ct. App. 2000). Summary judgment is appropriate only where the evidence shows that there is no genuine issue of material fact, and the moving party is entitled to a judgment as a matter of law. *Id.*; Ind. Trial Rule 56(C). To prevail on a summary-judgment motion, a party must demonstrate that the undisputed material facts negate at least one element of the other party's claim. *Merchs. Nat'l Bank*, 741 N.E.2d at 386. Once the

moving party has met this burden with a *prima facie* showing, the burden shifts to the nonmoving party to establish that a genuine issue does in fact exist. *Id.* The party appealing the summary judgment bears the burden of persuading us that the trial court erred. *Id.* "In determining whether there is a genuine issue of material fact precluding summary judgment, all doubts must be resolved against the moving party and the facts set forth by the party opposing the motion must be accepted as true." *Lawlis v. Kightlinger & Gray*, 562 N.E.2d 435, 438–39 (Ind. Ct. App. 1990), *trans. denied*.

[9] Kenny Kent contends that it is entitled to summary judgment on Samantha's claim pursuant to the Act, arguing that there is no designated evidence that it has ever been engaged in the business of selling S-1693 drums, a requirement for the Act to apply. As for Samantha's negligence claim, Kenny Kent contends that it had no duty of care to John as a matter of law, there is no designated evidence that it breached any duty it may have had to John, there is no designated evidence tending to show that it ever possessed the Drum, and the designated evidence of John's conduct renders him more than fifty percent at fault as a matter of law.

# I. Products Liability

[10] Pursuant to the Act,

> a person who sells, leases, or otherwise puts into the stream of commerce any product in a defective condition unreasonably dangerous to any user or consumer or to the user's or consumer's property is subject to liability for physical harm caused by that

product to the user or consumer or to the user's or consumer's property if:

(1) that user or consumer is in the class of persons that the seller should reasonably foresee as being subject to the harm caused by the defective condition;

(2) the seller is engaged in the business of selling the product; and

(3) the product is expected to and does reach the user or consumer without substantial alteration in the condition in which the product is sold by the person sought to be held liable under this article.

Ind. Code § 34-20-2-1. Whether the Act applies is a question of law. *Bayer Corp. v. Leach*, 153 N.E.3d 1168, 1178 (Ind. Ct. App. 2020) (citing *Stegemoller v. ACandS, Inc.*, 767 N.E.2d 974, 975 (Ind. 2002)). The Act imposes liability upon sellers and manufacturers of defective products. *Ford Motor Co. v. Rushford*, 868 N.E.2d 806, 809 (Ind. 2007) (citing *Morgen v. Ford Motor Co.*, 797 N.E.2d 1146, 1148 (Ind. 2003)). The Act "governs all actions that are: (1) brought by a user or consumer; (2) against a manufacturer or seller; and (3) for physical harm caused by a product … regardless of the substantive legal theory or theories upon which the action is brought." *Id.* at 810 (citing Ind. Code § 34-20-1-1) (ellipsis in *Rushford*).

[11] Kenny Kent argues that Samantha's claim pursuant to the Act fails because there is no designated evidence that it is or ever has been engaged in the business of manufacturing or selling drums, with the designated evidence indicating instead that it is in the business of selling and servicing automobiles.

As Kenny Kent points out, Samantha does not address this argument directly.[2] "An appellee's failure to respond to an issue raised by an appellant is akin to failure to file a brief, and subjects the appellee to reversal upon the appellant's showing of *prima facie* error on that issue." *Hacker v. Holland*, 575 N.E.2d 675, 676 (Ind. Ct. App. 1991) (citing *Day, et al. v. Ryan*, 560 N.E.2d 77, 84 (Ind. Ct. App. 1990)), *trans. denied*. "*Prima facie* is defined in this context as at first sight, on first appearance, or on the face of it." *State Farm Ins. v. Freeman*, 847 N.E.2d 1047, 1048 (Ind. Ct. App. 2006) (internal quotation omitted).

[12]     As we have noted,

> [the Act] applies to a seller of a defective product provided the seller is "engaged in the business of selling such a product." *See* IND. CODE § 33-1-1.5-3(a)(1) [repealed by P.L.1-1998, Sec. 221, recodified at Ind. Code § 34-20-2-1(2) with slightly modified language]. However, the occasional seller who is not engaged in that activity as part of his business is not liable in products liability. *Perfection Paint v. Konduris* (1971), 147 Ind. App. 106, 117, 258 N.E.2d 681, 686. Thus, for example, the [Act] does not apply to a homemaker who sells a jar of jam or a person who sells his used car to his neighbor. Restatement Second of Torts § 402A, comment (f)[.]

*Lucas v. Dorsey Corp.*, 609 N.E.2d 1191, 1202 (Ind. Ct. App. 1993), *trans. denied*.

We conclude that Kenny Kent has established *prima facie* error in this regard. The designated evidence, *i.e.*, evidence that Kenny Kent occasionally gave

---

[2] Samantha argues instead that Kenny Kent did not have to actually sell drums in order to be subject to the Act and that Kenny Kent is a "distributor" pursuant to the federal Occupational Safety and Health Act. We agree with Kenny Kent that Samantha's arguments, even if we were to accept them, do nothing to establish that Kenny Kent is in the business of selling drums.

empty drums to Rhoades and that the drums were nothing more than "a waste product" to be discarded, Appellant's App. Vol. II p. 169, without more, falls short of establishing that it was "engaged in the business" of selling them. *See Lucas*, 609 N.E.2d at 1202.

## II.  Negligence

[13]  Kenny Kent also contends that the trial court erred in denying it summary judgment on Samantha's negligence claim.  Negligence is a tort that requires proof of "(1) a duty owed by the defendant to the plaintiff; (2) a breach of that duty; and (3) injury to the plaintiff resulting from the defendant's breach." *Rhodes v. Wright*, 805 N.E.2d 382, 385 (Ind. 2004).  "Negligence will not be inferred; rather, all of the elements of a negligence action must be supported by specific facts designated to the trial court or reasonable inferences that might be drawn from those facts." *Kincade v. MAC Corp.*, 773 N.E.2d 909, 911 (Ind. Ct. App. 2002).  "An inference is not reasonable when it rests on no more than speculation or conjecture." *Id*.  "A negligence action is generally not appropriate for disposal by summary judgment." *Id*.  "However, a defendant may obtain summary judgment in a negligence action when the undisputed facts negate at least one element of the plaintiff's claim." *Id*.

[14]  Kenny Kent argues that it did not owe a duty of care to John as a matter of law, the designated evidence establishes that it did not breach any duty it may have had, and the designated evidence establishes a lack of proximate cause.  We need not address these arguments, however, as we accept Kenny Kent's argument that the designated evidence establishes, as a matter of law, that John

was more than fifty percent at fault for his fatal accident. Pursuant to the Comparative Fault Act, "[i]f the percentage of fault of the claimant is greater than fifty percent (50%) of the total fault involved in the incident which caused the claimant's death, injury, or property damage, the jury shall return a verdict for the defendant[.]" Ind. Code § 34-51-2-7(b)(2). It is generally true that "the apportionment of fault is uniquely a question of fact to be decided by the fact-finder." *Hampton v. Moistner*, 654 N.E.2d 1191, 1195 (Ind. Ct. App. 1995). It is also true, however, that "'when there is no dispute in the evidence and the fact-finder is able to come to only one logical conclusion[,]'" the "apportionment of fault becomes an issue of law solely for the […] court[.]" *St. Mary's Med. Ctr. v. Loomis*, 783 N.E.2d 274, 285 (Ind. Ct. App. 2003) (quoting *Moistner*, 654 N.E.2d at 1195). This is one of those cases.

[15] The designated evidence shows that the top of the Drum had a conspicuous, red pictogram of a flame with the words "FLAMMABLE LIQUID[,]" the notation "DANGER Highly flammable liquid and vapor[,]" and a more specific warning label that stated that the Drum was "hazardous when empty" and that one should not "flame cut, braze, or weld [the] empty container." Appellant's App. Vol. II pp. 11, 175; Vol. III p. 177. Moreover, there is no question that any person bringing a cutting torch to the Drum to remove that top would have seen the prominently-displayed warning label. Given that the explosion propelled the top upward into John's face, he was undoubtedly looking down at the label when the explosion occurred.

[16] The designated evidence also indicates that, over the course of his fifteen-year career at Alcoa, John had received training for and had worked with: combustible dust; critical risk management; fire prevention, protection, and extinguishers; hazard communication; performing hot works and hot-work permit refresher training module; tri-annual refresher training; workplace critical hazard refresher training; and workplace health hazards. John was trained that sparking tools are an ignition source and that one should "[n]ever cut or weld on a drum" because "[h]ot work performed on piping, tanks, vessels, containers, and confined spaces that contain *or have previously contained* a hazardous, flammable or combustible liquids can explode," and "*[p]iping, tanks and vessels can explode!!!!!!*" Appellant's App. Vol. VII p. 62 (first emphasis added; second emphasis in original).

[17] In light of the clear, unambiguous, and conspicuous warning label on the drum stating that it contained "FLAMMABLE LIQUID" and John's specific knowledge through his work and training that cutting on a drum that contained, or had previously contained, a flammable liquid with a torch could cause an explosion, we cannot conclude that John's fault must be left to a finder of fact. John knew or should have known the risks of cutting into the Drum with a torch. *See, e.g.*, *Coffman v. PSI Energy, Inc.*, 815 N.E.2d 522, 529 (Ind. Ct. App. 2004) (concluding that plaintiff's negligence was more than the total of any alleged negligence on the part of the appellees as a matter of law where plaintiff testified that he knew of specific risks associated with using a metal tarp frame on a truck near power lines), *trans. denied*. We conclude that the

designated evidence allows only one conclusion, namely, that John was more than fifty percent at fault for the explosion as a matter of law. Because Samantha cannot show that Kenny Kent is at least fifty percent at fault, she cannot recover, and Kenny Kent is therefore entitled to summary judgment on Samantha's negligence claim.

[18] We reverse the judgment of the trial court and remand for further proceedings consistent with this opinion.

May, J., and Mathias, J., concur.